(No. 35250.—

ILLINOIS CHIROPRACTIC SOCIETY *et al.,* Appellees, *vs.* P. H. BERNS, Appellant.

*Opinion filed September 24, 1959.*

HARRY L. PATE, of Tuscola, for appellant.

R. W. DEFFENBAUGH, of Springfield, for appellees.

Per CURIAM: This is an appeal from a decree of the circuit court of Clinton County, enjoining the defendant from practicing chiropractic within such county, and especially within a competitive radius of plaintiffs, until he shall be validly licensed. Defendant raised the issue of the constitutionality of the Medical Practice Act, (Ill. Rev. Stat. 1957, chap. 91, pars. 1 *et seq.*) in the court below and, upon an adverse ruling, appealed directly to this court.

Plaintiffs are the Illinois Chiropractic Society, a corporation, and three duly licensed chiropractors who practice in Marion and Madison counties. Licensed chiropractors, who practice in Illinois, constitute the membership of the society.

The complaint alleged that defendant was practicing chiropractic in Breese, without a license, and that he thereby encroached upon the individual plaintiffs' franchises. Defendant moved to dismiss on the ground that the complaint did not state a cause of action for an injunction. The motion was denied. Thereafter, defendant filed an answer denying the allegations of the complaint and, as affirmative defenses, alleged that the plaintiff corporation had no right to bring this action; that the individual plaintiffs had an adequate remedy at law; and that sections 2, 3, 4, 5(2)(b), and 17a of the Medical Practice Act, (Ill. Rev. Stat. 1957, chap. 91, pars. 2, 3, 4, 5(2)(b), and 16b—1,) are unconstitutional.

Defendant graduated from the Missouri Chiropractic College in 1950. It was then recognized and accredited by the Department of Registration and Education of the State of Illinois. In 1952, he made application to take the Illinois

chiropractic examination but failed to do so. Presently he is practicing chiropractic in Breese and the surrounding area without a license. He holds himself out as a chiropractor by signs, telephone listings and newspaper advertisements.

Christine Melvin, an investigator for the Department of Registration and Education, testified that she visited defendant's office on February 10, 1958; that she asked for a treatment and he took her into his office; that a Heartometer was on his desk and a Portosonic or Ultrasonic machine, an X-ray machine and a vertical adjusting table were also in the office; and that he wrapped a gray cloth, which was connected to the Heartometer and a round ball by a tube, around her upper left arm and asked her not to move or speak since such exertion would disturb the lines of the Heartometer.

She further testified that although she was in good health, she told defendant that she had a pain between her shoulder blades and under the right shoulder blade; that after eating she became nauseated and had a low back pain; that defendant told her the symptoms sounded like liver trouble, but to be sure he would have to give further tests, checking seventeen parts of the body; that on the next day, he repeated the procedure with the Heartometer and later reported orally and in writing that she had "congestion to a degree of the liver causing a circulation condition." She stated that he advised her to refrain from eating fried and greasy foods and gave her a bottle of vitamin pills labeled Pan-Enzyme and wrote "Three a Day" on the bottle; that he gave her a chiropractic adjustment; and that he charged her $10 for the examination, $4 for the vitamins and $2 for the adjustment.

The individual plaintiffs testified that they were licensed chiropractors, practicing in the same area as the defendant; and that the practice of chiropractic is any treatment of human ailments without the use of medicine, drugs or operative surgery.

Defendant produced four witnesses who were graduates of the Palmer School of Chiropractic in Davenport, Iowa. They testified that they were chiropractors and were practicing in Illinois without a license. They, like defendant, are members of the Prairie State Chiropractic Association, and define chiropractic as limited to the adjustment of the spine by hand for the removal of nerve pressure or interference. Defendant's witnesses, however, agreed that the diagnosis of a condition of the liver, advice on diet, and the giving of pills was not within their definition of chiropractic.

At the conclusion of the hearing, the trial court found the issues for the plaintiffs and entered a decree permanently enjoining the defendant from practicing chiropractic in Clinton County and especially within competitive radius of the practice of the individual plaintiffs, or within any competitive radius of the practice of the members of the corporate plaintiff, Illinois Chiropractic Society, until he shall be validly licensed to do so under the laws of Illinois. From this decree defendant appeals.

It is apparently conceded, and we think it patent, that defendant is engaged in the practice of medicine in one of its branches, and purports to treat human ailments by means of chiropractic, without a license, which constitutes a misdemeanor under the Medical Practice Act. (Ill. Rev. Stat. 1957, chap. 91, par. 16j.) Defendant, however contends that the Medical Practice Act, which requires chiropractors to be licensed is unconstitutional as to him, and in the alternative that injunctive relief is improper.

The constitutional attack is two-fold. Defendant first contends that the requirements of the Medical Practice Act are unreasonable and discriminatory as to chiropractors in that section 5(1)(a) requires that a candidate for an unlimited license to practice medicine need be only a graduate of a medical college, and have "completed a four years' course of instruction in a high school or its equivalent," while section 5(2)(b) requires that an applicant for a

limited license, such as a chiropractor, must be a graduate of a professional school which requires as a prerequisite to admission thereto "a four years' course of instruction in a high school."

Defendant urges that this is an unconstitutional discrimination requiring of a chiropractor greater educational prerequisites than are demanded of a medical doctor. We believe that no discrimination exists. The defendant graduated from a then accredited school of chiropractic, and is therefore unaffected by such alleged discrimination.

The Medical Practice Act requires of the general medical practitioner two years of premedical school, four years medical school, and twelve months internship, all in schools, medical colleges and hospitals of good standing. An applicant for a limited license to treat human ailments without the use of drugs, medicines or surgery need only have four years of high school and four years instruction in a school of good standing which teaches the system or method of treating human ailments designated on his application. Thus, the Medical Practice Act prescribes far more stringent educational requirements for an unlimited license than for a limited license. Defendant's contention was conclusively disposed of in *People ex rel. Dyer* v. *Walsh,* 346 Ill. 52, where we said at page 56:

"Petitioners insist that there is a discrimination, in that the act imposes higher and more strict educational standards upon those treating human ailments without the use of drugs or medicines and without operative surgery than upon those practicing medicine in all its branches. The argument made in this connection appears to be based upon the fact that those treating human ailments without the use of drugs or medicines and without operative surgery who graduated after July 1, 1926, from a school teaching their system, are required to show that such school required, as a prerequisite to admission thereto, a four-year course of instruction in a high school, whereas those practicing medicine in all its

branches who graduate from a medical school after the act became effective are required to show that such school required, as a prerequisite to admission thereto, a two-year course of instruction in a college of liberal arts or its equivalent. To hold that the standard of preliminary education thus imposed upon those treating human ailments without the use of drugs or medicines and without operative surgery is higher and more strict than that imposed upon those practicing medicine in all its branches would be to arrive at a conclusion opposed to that dictated by common knowledge of our educational system. Our view of the educational requirements prescribed by the Medical Practice Act has already been expressed in certain of the earlier cases cited. In the *Witte case*, [*People* v. *Witte,* 315 Ill. 282, 289 and 290,] we said: 'An applicant for a license to practice any system or method of treating human ailments without the use of drugs or medicines and without operative surgery who is a graduate of a school in which the particular system or method of treatment is taught, whether before or after the passage of the act, is not required to show any instruction whatever in any college of liberal arts. If a person chooses to fit himself for a particular system or method of treating human ailments and to limit his practice thereto the choice is voluntarily made. The educational requirements for such practice are not equal to those prescribed for the unrestricted practice of medicine.' In the *Walder case* [*People* v. *Walder,* 317 Ill. 524, 527 and 528,] we said: 'Taking into consideration the subject matter with which the legislature was dealing, we are of the opinion that the requirements applicable to the limited practitioner are not subject to the charge of being arbitrary and unreasonable but that they are liberal when compared with the requirements of the same act applicable to persons who desire to practice medicine in all of its branches.' "

Defendant next contends that the Medical Practice Act is unconstitutional in that a chiropractor must take an ex-

amination conducted by five reputable physicians licensed to practice medicine and surgery in Illinois; and that this requirement unconstitutionally discriminates against chiropractors. It is apparent from this record that defendant meets all the requirements to take the State examination for a limited license to practice chiropractic; that he applied to take the examination, but failed to do so. In effect he asks this court to assume, in advance of taking the examination, that the Medical Examination Board will discriminate against him, and deny him his constitutional rights. This assumption is clearly unjustified. (*Bourjois, Inc.* v. *Chapman,* 301 U.S. 183, 188, 81 L. ed. 1027; *Lehmann* v. *State Board of Public Accountancy,* 263 U.S. 394, 398, 68 L. ed. 354.) On the contrary, we must presume that the examining board will conscientiously follow the mandate of section 20 of the Medical Practice Act (Ill. Rev. Stat. 1957, chap. 91, par. 16e,) which provides:

"The provisions of this Act shall not be so construed as to discriminate against any system or method of treating human ailments, or against any medical college, or any professional school, college or institution teaching any system or method of treating human ailments, on account of any such system or method which may be taught or emphasized in such medical college, or in such professional school, college or institution."

The precise question presented by defendant was raised in *People* v. *McGinley,* 329 Ill. 173, 178-180 incl., where we specifically upheld the constitutionality of the provisions for the examination of chiropractors by an examining board composed of licensed physicians and surgeons. In so doing we carefully considered and distinguished *People* v. *Love,* 298 Ill. 304, upon which defendant relies. We are not impressed with any reason here advanced to justify the abandonment of the decision in *McGinley.*

If prejudice exists between physicians and chiropractors, there is no indication that it is affecting the fairness of the

conduct of the examination of chiropractors or that it will do so in the future. Indeed, the record before us indicates that the prejudice existing between the chiropractors of the Illinois Chiropractic Society and the Prairie State Chiropractic Association rivals in intensity that charged to exist between the other branches of the healing arts. On the record before us, we cannot condemn the legislative and administrative decisions to entrust the examination on the treatment of human ailments to those holding unrestricted licenses. As we indicated in *McGinley*, section 20 of the Medical Practice Act (Ill. Rev. Stat. 1957, chap. 91, par. 16e,) affords ample protection against the arbitrary action of the examining board. (Cf. *Chicago College of Osteopathy* v. *Puffer*, 5 Ill.2d 441.) We therefore conclude that defendant's constitutional objections to the Medical Practice Act are unsound.

In addition to the foregoing constitutional objections, defendant contends that an injunction should not issue in that plaintiffs have a adequate remedy at law, and equity should not enjoin the commission of a crime, such as the illegal practice of chiropractic.

This argument was laid to rest in our recent decision in *Burden* v. *Hoover*, 9 Ill.2d 114, in which we held injunctive relief available to a licensed chiropractor to restrain the practice of his profession by an unlicensed person, despite the existence of criminal sanctions. We do not think the cases are distinguishable. We have carefully examined the arguments of defendant and find nothing therein which would justify an abandonment of the rule announced in *Burden*. We therefore adhere to that decision, and hold that injunction is a proper remedy in the case at bar. Cf. *Smith* v. *Illinois Adjustment Finance Co.* 326 Ill. App. 654.

We have also examined the language of the injunction and believe that it is proper in view of the undisputed evidence that defendant was not licensed to practice chiropractic in Illinois and has continuously persisted in such

364

illegal conduct. The language of the writ clearly gives defendant notice of the conduct enjoined and is as specific as the nature of the case requires.

It follows that the decree of the trial court is accordingly affirmed.

*Decree affirmed.*