426 So.2d 1112 (1983)
FLORIDA MEDICAL ASSOCIATION, INC.; Florida Society of Ophthalmology; Edward W. Dougherty, Jr.; William J. Broussard; and George Browning, Appellants,
v.
DEPARTMENT OF PROFESSIONAL REGULATION, Board of Optometry, Florida Optometric Association; James A. Stephens, O.D.; and Donnie D. Dance, O.D., Appellees.
No. AP-451.
District Court of Appeal of Florida, First District.
February 2, 1983.
Kenneth G. Oertel of Oertel & Hoffman, P.A., Perkins & Collins, Tallahassee, and John E. Thrasher, Jacksonville, for appellants.
Jim Smith, Atty. Gen., Patricia R. Gleason, Asst. Atty. Gen., Tallahassee; for appellees Dept. of Professional Regulation and Bd. of Optometry.
Leonard A. Carson and James W. Linn, Seyfarth, Shaw, Fairweather & Geraldson, Tallahassee, for appellees Florida Optometric Ass'n, James A. Stephens, O.D., and Donnie D. Dance, O.D.
LARRY G. SMITH, Judge.
Appellants seek review of a final order of the Division of Administrative Hearings, Department of Administration, dismissing their rule challenge petition for lack of standing. At issue is the validity of Rule 21Q-3.10 of the Board of Optometry, purporting to set standards for the prescribing of certain drugs by optometrists, and providing guidelines for the determination *1113 of the competence of optometrists to use and prescribe drugs in their practice.[1] Our review convinces us that the petition sufficiently alleges facts to establish standing with respect to the Florida Medical Association, Inc., Florida Society of Ophthalmology, and William J. Broussard, M.D., a licensed Florida physician specializing in ophthalmology. We find, however, no adequate basis for standing on the part of George B. Browning, a licensed Florida pharmacist, or Edward J. Dougherty, Jr., who claims standing on the basis of his status as a past and continuing patient of optometrists. Reversed in part and affirmed in part.
Preliminarily, without going into the exact phraseology used in the lengthy rule challenge petition, we observe that it adequately alleges that the rule would cause prospective economic injury to physicians (particularly ophthalmologists) licensed under Chapter 458, Florida Statutes, by allowing optometrists to provide treatment, involving the use and prescription of "legend drugs,"[2] to patients who otherwise would be required to obtain such treatment from physicians.[3] Although these allegations apparently *1114 met the "injury in fact" test to the satisfaction of the hearing officer, he nevertheless concluded that the physicians and the medical associations had no standing, and concluded as well, for additional reasons, that neither the optometrist patient or the pharmacist had standing.[4]
As to standing of the physicians, the hearing officer concluded that although their allegations of economic injury met the "injury in fact" requirement of standing, the petitioners failed to meet the second of the bi-partite standing requirements of Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), that of showing that the "zone of interest" they asserted was within the "zone of interests" protected by the statute being implemented by the rule.[5]
We conclude that the hearing officer erred in the interpretation and application of the "zone of interest" requirement in the light of the allegations made by the petition. It must be borne in mind that petitioners challenged the validity of the proposed rule, under Section 120.54(4)(a),[6] alleging that the proposed rule was an invalid exercise of delegated legislative authority. This distinguishes the case from Agrico Chemical Company v. Department of Environmental Regulation, 406 So.2d 478 (Fla. 1st DCA 1981), relied upon by the *1115 hearing officer, for in that case there was no contention of unlawful exercise of authority, only opposition (by competitors of Agrico) to DER's granting of a permit under the environmental laws, based solely on claims by the competitors of Agrico that their economic interests would be affected. The absence of a claim of illegality of the proposed agency action, among other differences, also distinguishes Grove Isle, Ltd. v. Bayshore Homeowners, et al., 418 So.2d 1046 (Fla. 1st DCA 1982), Greene v. State Department of Natural Resources, 414 So.2d 251 (Fla. 1st DCA 1982), and School Board of Orange County v. Blackford, 369 So.2d 689 (Fla. 1st DCA 1979), all of which denied relief because of lack of standing. See also, Shared Services, Inc. v. State, Department of Health And Rehabilitative Services, 426 So.2d 56 (Fla. 1st DCA 1983), in which the court relied upon the Agrico rationale in denying, for lack of standing, the request of Shared Services for a formal hearing on the application of Shands Teaching Hospital for licensure to operate an air ambulance service under Chapter 401, Florida Statutes, since Shared Services essentially alleged only potential competitive economic injury as the basis for their objections to Shands' application for license and certification.
While we readily accept the premise that physicians, ophthalmologists in particular, have "no legally recognized interest in being free from competition ...," ASI, Inc. v. Florida Public Service Commission, 334 So.2d 594, 596 (Fla. 1976), it by no means follows that the assertion of interest economic in nature can never furnish the basis for standing to challenge proposed or adopted agency rules. In State, Department of Health and Rehabilitative Services v. Alice P., 367 So.2d 1045, 1052 (Fla. 1st DCA 1979), footnote 2, this court recognized a physician as having satisfied the "substantially affected" requirement of Section 120.54(4) by showing that the Department's cut-off of funds for elective non-theraputic abortions decreased the number of patients served by the abortion clinic of which he was the director. Further, in Professional Firefighters of Florida, Inc. v. Department of Health And Rehabilitative Services, 396 So.2d 1194 (Fla. 1st DCA 1981), allegations that the Department's proposed rules governing the licensing and certification of paramedics affected the "continued employment" of members of the Association, and would injure individual members "monetarily," were held sufficient to confer standing upon individual members of the Association.[7]
The U.S. Supreme Court, in Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), acknowledged that its prior decisions in Data Processing Service v. Camp, supra, and Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), introduced broader standing requirements under § 10 of the APA than previously existed, by permitting standing where a party alleges "that the challenged action has caused them `injury in fact,' and where the alleged injury was to an interest `arguably within the zone of interests to be protected or regulated' by the statutes that the agencies were claimed to have violated."[8]Sierra Club, 405 U.S. at 733, 92 S.Ct. at 1365. Then, pointing out that the nature of the injuries alleged in both Data Processing and Barlow was economic injury, the court stated: "These palpable economic injuries have long been recognized as sufficient to lay the basis for standing, with or without a specific statutory provision for judicial review." *1116 Id. at 733, 734, 92 S.Ct. at 1365, 1366.
The court also held that the first prong of the Data Processing bi-partite test was met by physicians, in Singleton v. Wulff, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), who alleged "injury in fact" as a consequence of a Missouri statute which excluded certain abortions (which they had and would continue to perform) from Medicaid benefits which otherwise would have been available for payment to them. Although the court referred to Data Processing, it did not use the "zone of interest" phraseology, but couched the second prong in terms of "whether, as a prudential matter, the plaintiff-respondents are proper proponents of the particular rights on which they base their suit." Singleton, 428 U.S. at 112, 96 S.Ct. at 2873.[9] The implications of the opinion are that "zone of interest," if still viable, is satisfied when a party asserts that a particular statute encroaches upon constitutional rights.[10] See footnote 9, supra. See, further, Golden v. Biscayne Bay Yacht Club, 521 F.2d 344, 348 (5th Cir.1975): "... [I]t is unquestionable that standing may be based upon an interest created by the Constitution or a statute."
Despite the fact that the Second District, in Rush v. City of St. Petersburg, 205 So.2d 11, 15 (Fla. 2nd DCA 1967), appeared to have some doubt on the question, it is now well settled in Florida that the right to practice medicine is a valuable property right protected by the due process clause. In State Board of Medical Examiners v. Rogers, 387 So.2d 937 (Fla. 1980), the court held that an order of the State Board of Medical Examiners unreasonably curtailed the exercise of physicians' professional judgment in administering certain treatment to their patients. Mr. Justice Alderman, writing for the court, stated (at page 939):
... Although the State has the power to regulate the practice of medicine for the benefit of the public health and welfare, this power is not unrestricted. The regulations imposed must be reasonably related to the public health and welfare and must not amount to an arbitrary or unreasonable interference with the right to practice one's profession which is a valuable property right protected by the due process clause. Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); Dent v. West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889). (emphasis supplied)
Florida courts of earlier days have also unhesitatingly declared the law on this point:
... We cannot overlook the fact that the right to practice medicine is a valuable property right and must be protected under the constitution and laws of Florida.
State ex rel. Sbordy v. Rowlett, 138 Fla. 330, 190 So. 59, 62, 123 ALR 769. The above language is also quoted in State ex rel. Estep v. Richardson, 148 Fla. 48, 3 So.2d 512, 513 (1941). As further authority, appellants cite numerous cases from other jurisdictions in which the right of physicians or other health care professionals (physicians, dentists, chiropractors, optometrists) to practice their respective professions has been specifically determined to confer *1117 standing to challenge and enjoin encroachments upon their professional interests,[11] or in which these rights of professionals have been obviously recognized as the basis for standing, without indication that the issue of "standing" as such, was specifically raised in the case.[12] We have not overlooked Dade-Commonwealth Title Insurance Co. v. North Dade Bar Association Inc., 152 So.2d 723 (Fla. 1963). It is obvious, however, that the court did not reach the question at issue here, but instead rested its decision denying the right of a voluntary bar association or individual lawyers to enjoin the unauthorized practice of law upon the Integration Rule, and the 1956 amendments to Article V, Florida Constitution, pursuant to which the Florida Bar became the arm of the court with exclusive authority over the prosecution of such actions.
Turning to the case before us, we find that both Chapters 463 and 458 are concerned with the protection of the public by insuring that persons engaged in the various health care professions are qualified to do so.[13] These and other statutes pertaining to the health care field (and the various boards acting under authority of the statutes), also serve the purpose of delineating, to a great extent, the relative rights and privileges of health care professionals. It necessarily follows that an agency's determination of what forms of treatment are permissible or prohibited within each health care profession is within the "zone of interest" protected by the statutes. The rule at issue here, according to petitioners, allows optometrists to provide a form of treatment for which they are not qualified, and which has not been authorized by the legislature under Chapter 463. They allege further that the activities permitted by the rule are encompassed within the "practice of medicine," which the legislature has declared to be the exclusive domain of physicians licensed under Chapter 458[14]. The practice of medicine or attempt to practice medicine without a license is a felony of the third degree. Section 458.327 (Florida Statutes). If the contentions of appellant are correct, the rule purports to authorize acts by optometrists which are unlawful under Chapter 458, and contrary to the stated purposes of both Chapters 463 and 458.
We find, contrary to the ruling of the hearing officer, that the petition in behalf of the physician and the medical associations satisfies the "zone of interest" requirement. We note appellee's contention that appellants must assert an injury solely within the "zone of interest" protected by Chapter 463. This is incorrect. Since the crux of the controversy involves the claim that Chapter 463 does not authorize the rule, it is obvious that the effect of other statutes must be considered in determining standing. Neither Shared Services, supra, nor Agrico Chemical, upon which it relies, is authority for the proposition that the basis for standing must be found within the particular statute being implemented by agency *1118 action. These cases simply illustrate the rule that in licensing or permitting proceedings a claim of standing by third parties based solely upon economic interests is not sufficient unless the permitting or licensing statute itself contemplates consideration of such interests, or unless standing is conferred by rule or statute, or based upon constitutional grounds.
Since we base our decision as to standing of Dr. Broussard upon his rights as a licensed physician, and his rights derived from Chapter 458 to challenge interpretations of that Chapter or other laws which would allow medical practices in derogation of the purpose and intent of those laws, we find it unnecessary to venture a guess as to whether other claims made by Dr. Broussard and the associations could meet the "standing" muster. Therefore, whether a sufficient injury is shown by claims that the rule in question will have the effect of lessening the professional respect and esteem of physicians in the public eye, for example, must await another day for an answer. We note in passing, however, that a "loss of public respect for their members' profession," though "a faint and tenuous interest," nevertheless has been recognized as sufficient for standing of a professional association (The American College of Nursing Home Administrators) to challenge a federal regulation in State of Florida v. Weinberger, 492 F.2d 488 (5th Cir.1974).
We see no need for further elaboration upon the standing of the associations. The allegations of the petition (see footnote 3, supra), once it is determined, as we have, that Dr. Broussard has standing, are clearly sufficient to bring the associations within the expanded standing criteria for associations spelled out in Florida Home Builders Association v. Department of Labor and Employment Security, supra, footnote 7.
Finally, we find persuasive the reasoning of the hearing officer denying standing of Mr. Browning, the pharmacist, and Mr. Dougherty, the optometric patient. See footnote 4, supra. With respect to the pharmacist, we suggest that while he may be "interested" in whether the rule is valid or invalid, he has not demonstrated an injury except in the abstract or speculative sense, which is not sufficient. Florida Department of Offender Rehabilitation v. Jerry, 353 So.2d 1230 (Fla. 1st DCA 1978). Whether the validity of the rule is or is not administratively or judicially determined, Mr. Browning admits that he is bound by the directives of the Board of Pharmacy. We agree with the hearing officer's conclusion that his remedy lies with the Board of Pharmacy, but not in this rule challenge proceeding.
AFFIRMED in part and REVERSED in part.
ROBERT P. SMITH, Jr., C.J., and THOMPSON, J., concur.
NOTES
[1] The rule challenge proceeding was filed pursuant to Section 120.54(4)(b), Florida Statutes, within fourteen days after notice in the Florida Administrative Weekly of the Board of Optometry's intent to adopt the rule. After dismissal of the petition, the Board proceeded with the adoption and filing of the rule on November 30, 1982. This appeal followed. In view of the adoption of the rule, we find it unnecessary to consider whether the Board's 1975 statement of policy, which according to the petition interprets Chapter 463, Florida Statutes, as allowing optometrists to prescribe legend drugs, has been used and applied improperly as a rule, because not adopted pursuant to Chapter 120, Florida Statutes. Cf. Department of Professional Regulation v. Hall, 398 So.2d 978 (Fla. 1st DCA 1981), footnotes 1, 4; and Cf. also, opinion of the Attorney General, March 22, 1957 (AGO-057-79) that optometrists are not permitted to administer drugs or perform surgery.
[2] The term "legend drug" is defined in Rule 21Q-3.10(5)(a), Florida Administrative Code, as referring to substances required by federal or state law to be dispensed only on prescription. Controlled substances, Chapter 893, Florida Statutes, are expressly excluded from the definition of "legend drug."
[3] In behalf of Dr. Broussard, the petition alleged that the rule unlawfully interfered or damaged valuable property rights, including the right to practice medicine, pursuant to his license acquired under Chapter 458, Florida Statutes; that the legislative purpose of Chapters 463 and 458 is the protection of the public, and that physicians have a duty to protect the public against harmful medical practices as an essential, traditional and accepted facet of their profession; that ophthalmologists are uniquely qualified by their superior education, training and experience to provide eye care, and that optometrists are not qualified to render treatment by the use of drugs. He also alleged that the general public has an imprecise and largely inaccurate understanding of the qualifications and training of optometrists and ophthalmologists, and, in effect, would be unable to make an informed decision concerning the qualifications of optometrists, as opposed to ophthalmologists, with respect to their need for certain kinds of eye care, all of which would result in injury to the public, and interfere with ophthalmologists' ability to properly render needed medical services.

The allegations with respect to the medical and ophthalmological associations included allegations that the associations are representative of Florida physicians and ophthalmologists, all of whom will suffer economic injury as a result of the rule; that physicians individually have a duty to protect the public interest, and that the protection of the public interest is within the goals, objectives and purposes of the associations; and that neither the claim nor the nature of the relief requested requires the presence in the case of individual physicians or ophthalmologists.
As to Mr. Browning, the licensed pharmacist, the allegations include the contention that Florida law and rulings by the Board of Pharmacy hold that pharmacists cannot fill prescriptions for drugs by optometrists; that the rule will require Browning either to fill optometrists' prescriptions or to suffer economic loss by loss of customers if he fails to fill such prescriptions; and conversely, if he does fill optometrists' prescriptions he will run the risk of incurring liability for any injury caused by the drugs, and will be acting in violation of directions by the Board of Pharmacy. He alleges that either way, he would act at his peril, and that application to the Board of Pharmacy would not furnish him relief, since he already knows the position of the Board of Pharmacy, which is opposed to the rule of the Board of Optometry.
Petitioner Edward Dougherty alleges that he is currently receiving eye care from an optometrist, and has a continuing need and desire to receive such care; that he objects to the rule allowing optometrists to use drugs in their practice because he believes it goes beyond the statutory definition of the "practice of optometry," and is of the opinion that such action violates Chapter 458, Florida Statutes. He states that he is injured because he has the choice of either never going to an optometrist again, or if he does, to do so in hope that he will not be injured by the optometrist's illegal use of drugs. He states that he has no way to avoid the dilemma except to discontinue going to an optometrist, which he does not desire to do.
[4] The hearing officer found that the individual petitioner, Dougherty, failed to show any "injury in fact," in that his potential injury is speculative, nonspecific and hypothetical, lacking in immediacy and reality; and, more particularly, that Dougherty is free to avoid the injury of which he complains by simply refusing optometric treatment which includes the use of drugs, which would place him in the same position he would be in without the rule, since otherwise he would be required to go to a licensed physician for treatment involving drugs. As to the pharmacist, Mr. Browning, the hearing officer found no "injury in fact" because doubt or uncertainty concerning the eventual impact of a rule cannot satisfy such requirement, and that if Mr. Browning is in doubt, he has only to petition the Board of Pharmacy for a declaratory statement under Section 120.565, Florida Statutes (1981).
[5] The "zone of interest" test originated in Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), as the second part of a two-part test for standing: First, whether the complainant alleges that the challenged action has caused him injury in fact, economic or otherwise; second, whether the interest sought to be protected by the complainant is "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Id. at 152, 153, 90 S.Ct. at 829, 830. The quoted language first appears in opinions of this court, so far as we have been able to determine, in City of Panama City v. Board of Trustees of The Internal Improvement Trust Fund, 418 So.2d 1132, 1134 (Fla. 1st DCA 1982). Reference has been made to Data Processing in other Florida cases, without comment: General Development Corp. v. Kirk, 251 So.2d 284, 287 (Fla. 2nd DCA 1971); Save Sand Key Inc. v. United States Steel Corporation, 281 So.2d 572, 577 (Fla. 2nd DCA 1973) decision quashed, sub. nom. United States Steel Corporation v. Save Sand Key, Inc., 303 So.2d 9 (Fla. 1974); Florida Home Builders Association v. Department of Labor and Employment Security, 412 So.2d 351, 353 (Fla. 1982). Oddly, in one of the Second District's significant recent decisions on the standing question, Agrico Chemical Co. v. Department of Environmental Regulation, 406 So.2d 478 (Fla. 2nd DCA 1981), neither Data Processing nor the "zone of interest" test, by name, were mentioned. Instead, the court summarized standing requirements as follows (Id. at 482):

We believe that before one can be considered to have substantial interest in the outcome of the proceeding he must show 1) that he will suffer injury in fact which is of sufficient immediacy to entitle him to a Section 120.57 hearing, and 2) that his substantial injury is of a type or nature which the proceeding is designed to protect. The first aspect of the test deals with the degree of injury. The second deals with the nature of the injury... .
[6] Section 124.54(4)(a) provides that any "substantially affected person" may seek administrative determination of invalidity of a proposed rule on the ground that it is an invalid exercise of delegated legislative authority. A companion provision, Section 120.56(1), provides the same remedy as to rules which have become effective.
[7] Since individual members were parties, the Firefighter's opinion indicates that the association had standing under Florida Department of Education v. Florida Education Association United, Inc., 378 So.2d 893 (Fla. 1st DCA 1979). Professional Firefighters, 396 So.2d at 396. As to standing of associations, generally, see Florida Home Builders Association v. Department of Labor and Employment Security, 412 So.2d 351 (Fla. 1982), reversing the decision of this court found at 392 So.2d 21.
[8] At footnote 5, page 733, 92 S.Ct. at footnote 5, page 1365, the Sierra Club opinion states that the court does not reach any question concerning the meaning of the "zone of interest" test or its possible application to the facts of the case.
[9] The Supreme Court of Rhode Island, in a case remarkably similar in all respects to the one before us, ruled that "injury in fact, economic or otherwise" was sufficient, without regard to the "zone of interest" test, holding that claims of economic injury gave ophthalmologists standing to challenge legislation permitting optometrists to use certain drugs in their practice. Rhode Island Ophthalmological Society v. Cannon, 113 R.I. 16, 317 A.2d 124 (1974). Noting that the Data Processing bi-partite test was not binding on it, the Rhode Island court observed that it has been "severely criticized by those favoring the single `injury in fact' test." Id., 317 A.2d at 128. Support for this view is borne out by Davis, Administrative Law Treatise, § 22.02-11 (1982 Supp.), "The `Zone' Test," page 347: "Is the `zone' test the law? The best answer is: Sometimes it is but most of the time it is not, and a criterion for determining when it is the law is completely absent."
[10] The Singleton court was unanimous in upholding the physicians' right to assert their own constitutional rights to practice medicine, assuming such rights existed (not decided), and affirmed (by 5-4 vote), their right to assert the constitutional rights of their patients.
[11] Burden v. Hoover, 9 Ill.2d 114, 137 N.E.2d 59 (1956); Ezell v. Ritholz, 188 S.C. 39, 198 S.E. 419 (1938); Seifert v. Buhl Optical Co., et al., 278 Mich. 692, 268 N.W. 784 (1936); Sloan v. Mitchell, 113 W. Va. 506, 168 S.E. 800 (1933).
[12] Illinois Chiropractic Society v. Berns, 17 Ill.2d 356, 161 N.E.2d 334 (1959); Complete Service Bureau v. San Diego County Medical Soc., 43 Cal.2d 201, 272 P.2d 497 (1954); Boggs v. Werner, 372 Pa. 50, 94 A.2d 50 (1953); Palmer v. O'Hara, 359 Pa. 213, 58 A.2d 574 (1948); Curtis v. Registered Dentists of Oklahoma, 193 Okla. 233, 143 P.2d 427 (1943).
[13] Section 463.001(2) provides: "(2) The sole legislative purpose in enacting this Chapter is to ensure the protection of the public health and safety." Comparable provisions are found in Section 458.301. See, also, Florida Association of Dispensing Opticians v. Florida State Board of Optometry, 227 So.2d 736 (Fla. 2nd DCA 1969), involving a suit by the Association seeking declaration that its members were authorized by Section 484.01, Florida Statutes (1967) to prepare and fit contact lenses, in which the court stated (Id. at 738): "We do not think anyone will disagree that the beneficial purpose of Chapter 484, Fla. Stat. (1967), F.S.A., is to protect from harm the eyes of all people in Florida... ."
[14] Osteopathic physicians apparently have the same statutory authorization to prescribe drugs generally, under Section 459.003(3), Florida Statutes (1981), as do physicians under Section 458.305(3).