532 So.2d 1279 (1988)
FLORIDA SOCIETY OF OPHTHALMOLOGY; Florida Medical Association; William J. Broussard, M.D.; Tully C. Patrowicz, M.D., and Baxter H. Byerly, M.D., Appellants,
v.
STATE of Florida BOARD OF OPTOMETRY and state of Florida Department of Professional Regulation, Appellees.
No. BT-79.
District Court of Appeal of Florida, First District.
October 6, 1988.
Rehearing Denied November 18, 1988.
*1280 Kenneth G. Oertel, Segundo J. Fernandez, and M. Christopher Bryant, of Oertel & Hoffman, Tallahassee, for appellants.
Robert A. Butterworth, Atty. Gen., and John E. Griffin, Asst. Atty. Gen., Tallahassee, for appellee State of Fla. Bd. of Optometry.
Leonard A. Carson and Michael Wm. Morell, of Carson & Linn, P.A., Tallahassee, for amici curiae, Florida Optometric Ass'n, Howard J. Braverman, O.D., and Frank A. Broome, O.D.
ZEHMER, Judge.
This is one of several cases arising out of the ongoing dispute between medical and osteopathic physicians who practice ophthalmic medicine and optometrists concerning the authority of optometrists to administer and prescribe certain topical drugs for the diagnosis and treatment of the human eye.[1] The dispute involves enforcement of the 1986 amendment to chapter 463, chapter 86-289, Laws of Florida, which authorizes optometrists to administer and prescribe topical ocular pharmaceutical agents and establishes requirements for the certification of licensed optometrists to do so.[2] The Board of Optometry, Department of Professional Regulation (the Board), pursuant *1281 to its statutory authority to administer chapter 463 and enact rules for that purpose, § 463.005, Fla. Stat. (1987), adopted rule 21Q-10.001, Florida Administrative Code, to implement the certification procedure authorized by section 463.0055, Florida Statutes.[3] Appellants filed a petition with the Board challenging the validity of rule 21Q-10.001 and the validity of the application form the Board prescribed for use in certification proceedings. The petition also requested a section 120.57(1) hearing in respect to each and every optometrist's application for certification. Ruling on the petition, the Board entered a final order stating that petitioners lacked standing to initiate a section 120.57(1) formal hearing to challenge the validity of each such application.[4] The Board ruled that the alleged economic injury to licensed physicians practicing ophthalmic medicine, the alleged loss of public respect for the medical profession, and the alleged decline in the quality of eye care and health care available to the public, do not show that petitioners' substantial interests will be affected and determined by the Board in the challenged certification proceedings; thus, according to the final order, the petition was legally insufficient to establish that petitioners were entitled under chapter 120 to party status in such certification proceedings. Finding no error in the Board's ruling, we affirm.

I.
The detailed facts are set forth in the petition, and we take them to be true for *1282 purposes of this appeal. Each of the petitioners either is an organization that represents physicians practicing ophthalmic medicine or is such a physician. The Florida Society of Ophthalmology (FSO) "is a Florida not-for-profit incorporated association of ophthalmologists, who are allopathic and osteopathic physicians (M.D.'s and D.O.'s) specializing in the medical diagnosis of eye diseases, anomalies and disorders, and treatment with medication, surgery, and corrective lenses and prisms." The Society is organized and acts to further "the educational, professional, and economic interests of Florida ophthalmologists." The Society "routinely represents and serves its members" in governmental affairs, including legislative matters and litigation, and it "is committed to protecting, maintaining and improving the quality of eye care which is available to the public." The Florida Medical Association (FMA) is a Florida not-for-profit incorporated association of physicians (M.D.'s), and is organized and acts for its member physicians in a manner similar to FSO concerning legislative affairs and litigation. Petitioners William J. Broussard, Tully C. Patrowicz, and Baxter H. Byerly are physicians licensed by the State of Florida under chapter 458, Florida Statutes, who specialize in the field of ophthalmic medicine or ophthalmology. Many of their patients see optometrists for some of their vision care. They file this petition "on behalf of themselves and all other persons similarly situated; i.e., licensed Florida physicians practicing ophthalmic medicine in the State of Florida," and "on behalf of their patients, who are consumers of eye care and vision care services in the state of Florida."[5]
The Board is the agency in charge of regulating the practice of optometry and is authorized to make rules relating to standards of practice for optometrists. §§ 463.003, 463.005. It promulgated and filed rule 21Q-10.001 with the Secretary of State, effective November 20, 1986.
The petition attacks the validity of the rule and application form, alleging that the "application form for certification" to be filled out by each applicant has not been adopted by rule but nevertheless amounts to a rule, and that a committee of the Board reviewed completed applications on April 8 and 9, 1987, so that these applications could be acted upon by the Board at its meeting on April 10 and 11. The petition further alleges that petitioners and physicians represented by petitioners "are substantially affected by the Board's proposed certification of any optometrist as a certified optometrist" because: (1) "certification of optometrists, and the concomitant authorization of such certified optometrists to use and prescribe medications in their practice of optometry encroaches on the right of physicians licensed to practice medicine pursuant to chapter 458, a valuable property right subject to constitutional protection" and that petitioners "have been denied due process in regard to the impending infringement on or diminution in value of their property rights"; (2) "the quality of eye care and health care available to the public will decline as optometrists are certified to use and prescribe medicine in the practice of optometry" and therefore the certification of optometrists "presents a danger to the public, including but not limited to Petitioners' patients"; and (3) "the general public is uninformed as to the distinction between optometrists and ophthalmologists, when in fact significant differences exist in education, training, ability, experience, and scope of practice," and the "designation of some optometrists as `certified optometrist' further adds to that confusion and will result in the treatment by optometrists of patients who should be treated by physicians," which in turn will cause physicians such as are represented by petitioners to suffer economic "injury to their practices, loss of public respect for their profession, and damage to the health and welfare of Petitioners' patients and the patients of other similarly situated physicians." The petition then alleges the existence of numerous factual disputes.
*1283 The petition incorporates these allegations in each of three counts. Two counts based on section 120.56 contend that both rule 21Q-10.001 and the application form as an unadopted rule are an invalid exercise of delegated legislative authority. The third count, which is the subject of this appeal, requests a 120.57(1) formal hearing in respect to the "entitlement to certification of each and every optometrist which the Board proposes to certify" pursuant to section 463.0055 and rule 21Q-10.001, noting that no testing of such optometrists has been made public. As grounds for their right to be accorded such hearing, petitioners rely on the foregoing allegations of the effects on their substantial interests and demand that the Board refrain from taking final action on any of the proposed certifications.
The petition may be generally characterized as a broad attack, not only on the manner in which the Board is going about implementing certification under section 463.0055, but also on the validity of the underlying policy decision to permit optometrists to be certified to perform medical services using prescription drugs in the first place. The principal purpose of the petition is to delay any certification of optometrists until the Board has heard and determined petitioners' rule challenges.
Although the Board granted petitioners' request for a hearing in respect to the rule challenges in counts one and two,[6] it denied the 120.57(1) hearing requested in count three. The final order denying that hearing notes the enactment of chapter 86-289, Laws of Florida, and the implementation of section 463.0055 through the Board's adoption of rule 21Q-10.001, and concludes that petitioners "lack standing under Section 120.57, F.S., to contest applications for certification." The Board's order relies on Shared Services, Inc. v. State, Department of Health and Rehabilitative Services, 426 So.2d 56 (Fla. 1st DCA 1983), and explains:
The rationale of Shared Services, Inc., supra, is applicable to the instant petition. Although raising the issue of patient care, the thrust of Petitioners' assertion of standing is economic loss from competition or loss of public respect. Absent clear authority for the inclusion of competitive economic considerations into the certification process, the First District in Shared Services, Inc., makes clear that competitive economic considerations are not to be considered in licensing and cannot provide a foundation for a competitor to participate in the licensing process. A review of the certification provisions of Section 463.0055, F.S., discloses no intent on the part of the Legislature that competitive economic considerations be considered in the certification of optometrists to prescribe and administer topical ocular pharmaceutical agents. The Board is required by the directory term "shall" appearing in Section 463.0055(2), F.S., to certify optometrists who meet the requirements of subparagraphs (2)(a)-(c) of 463.0055. There is no authorization in subparagraphs (2)(a)-(c) for the Board to utilize competitive economic considerations as a criteria [sic] for certification.
Petitioners are licensed to practice medicine under the provisions of Chapter 458 and 459, F.S. Certification of optometrists is governed not by any provision appearing in Chapter 458 or 459, F.S., but solely by the provisions of Chapter 463, F.S. Taking the rationale of Petitioners' argument on standing to its logical conclusion, a medical licensee under Chapter 458 or 459, F.S., would have standing to contest the licensure of any health care practitioner licensed under Chapter 460 (Chiropractic), 461 (Podiatric Medicine), 464 (Nursing), 465 (Pharmacy), and 466 (Dentistry and Dental Hygiene) because any of these health care practitioners pose an economic threat to the medical profession. The Board does not believe that the Legislature intended licensees of one health care profession to *1284 be able to protect their economic status by thwarting the licensing of a competing health care profession. There is simply no language in Chapter 463, F.S., which can be read to suggest that the Legislature intended to create a right for medical licensees to participate in the licensing of any other health care practitioner.

II.
Petitioners raise two points on this appeal. They contend, first, that they have standing to initiate a 120.57 hearing in each certification proceeding because they are "substantially affected by the action of the Board of Optometry in certifying optometrists to administer and prescribe drugs." Second, they contend that reversal of the Board's wrongful denial of standing "renders any certification of optometrists since the filing of the petition only preliminary agency action, without the force and effect of a final order." In view of our affirmance on the first point, we need not reach the second.

A.
We initially observe that not everyone having an interest in the outcome of a particular dispute over an agency's interpretation of the law submitted to its charge, or the agency's application of that law in determining the rights and interests of members of government or the public, is entitled to participate as a party in an administrative proceeding to resolve that dispute. Were that not so, each interested citizen could, merely by expressing an interest, participate in the agency's efforts to govern, a result that would unquestionably impede the ability of the agency to function efficiently and inevitably cause an increase in the number of litigated disputes well above the number that administrative and appellate judges are capable of handling. Therefore, the legislature must define and the courts must enforce certain limits on the public's right to participate in administrative proceedings. The concept of standing is nothing more than a selective method for restricting access to the adjudicative process, whether it be administrative or purely judicial, by limiting the proceeding to actual disputes between persons whose rights and interests subject to protection by the statutes involved are immediately and substantially affected. Thus, it has been stated, the "purpose of the law of standing is to protect against improper plaintiffs." 59 Am.Jur.2d, Parties § 30 (1987).
The Florida Administrative Procedure Act, chapter 120, contains several provisions defining who has standing to appear as a party and initiate a section 120.57 hearing.[7] The basic definition of party in section 120.52(12) includes three categories of persons. Reduced to a simplistic statement, persons entitled to standing as a party are those who (1) are denominated as such by the constitution, a statute, or a rule (regulation); or, (2) have a substantial interest that is directly affected by proposed agency action; or, (3) in the exercise of the agency's discretion, are accorded the right to become a party by intervention in an existing proceeding. These statutory provisions represent legislative recognition of the concept of standing as an essential component of the administrative process.
The certification of optometrists under section 463.0055 obviously is a licensing proceeding, and section 120.60 makes such proceedings subject to section 120.57. Although one need not have his rights determined to become a party to a licensing proceeding, party status will be accorded only to those persons who will suffer an injury to their substantial interests in a manner sought to be prevented by the statutory scheme. We observed in Gadsden State Bank v. Lewis, 348 So.2d 343 (Fla. 1st DCA 1977), that one other than the applicant may participate as a party in a licensing proceeding even though his substantial interests are not being determined, because it is sufficient that such person's substantial interest[8] will be affected by the *1285 agency's determination. We later noted in Suwannee River Area Council, Boy Scouts of America v. State, Department of Community Affairs, 384 So.2d 1369 (Fla. 1st DCA 1980), that "[i]n Gadsden, this court held that Gadsden State Bank was entitled to a formal hearing, not because of its potential injury by a proposed competing bank, but because Gadsden Bank was a protestant expressly entitled to party status under the agency's own rules" and, further, because "the proceeding in Gadsden was required by law as the final step in the licensing or permitting process." Id. at 1374. See also Florida Department of Offender Rehabilitation v. Jerry, 353 So.2d 1230 (Fla. 1st DCA 1978), cert. denied, 359 So.2d 1215.
We do not find any provision in chapters 120, 458, 459, or 463 that expressly authorizes persons licensed under chapters 458 and 459 to have standing to participate in the certification process under section 463.0055. Thus, while the petitioning associations, FSO and FMA, may have standing to represent their members' interests before the Board in this licensing proceeding, Farmworker Rights Organization v. Department of Health and Rehabilitative Services, 417 So.2d 753 (Fla. 1st DCA 1982),[9] the standing of both the appellant physicians and appellant associations is necessarily predicated upon a finding that their substantial interests will be injuriously affected by the Board's action. Yet their alleged objections to the certification of optometrists under section 463.0055 fail to show that, other than the potential economic impact on their practice, their substantial interests will be injuriously affected in any manner that differs from the interests of the public generally in seeing that all applicants are certified in accordance with the statutory requirements.

B.
The applicable test was stated in Agrico Chemical Co. v. Department of Environmental Regulation, 406 So.2d 478, 482 (Fla. 2d DCA 1981), rev. denied, 415 So.2d 1359 (Fla. 1982) and 415 So.2d 1361 (Fla. 1982):
We believe that before one can be considered to have a substantial interest in the outcome of the proceeding he must show 1) that he will suffer injury in fact which is of sufficient immediacy to entitle him to a section 120.57 hearing, and 2) that his substantial injury is of a type or nature which the proceeding is designed to protect.
Appellants have failed to satisfy both elements of this test. While appellants may well suffer some degree of loss due to economic competition from optometrists certified to perform services that appellants alone were previously permitted to perform, we fail to see how this potential injury satisfies the "immediacy" requirement. More importantly, the allegations in the petition that these activities by certified optometrists will adversely affect the economic affairs of appellants are legally insufficient because the alleged economic injury does not fall within the zone of interest intended to be protected by the applicable statutes. See Boca Raton Mausoleum, Inc. v. State, Department of Banking and Finance, 511 So.2d 1060 (Fla. 1st DCA 1987). The nature of the injury to appellants' economic interests is no longer entitled to protection under chapters 458 and 459. Section 463.0055 entitles each applying optometrist to receive the requested certification upon showing compliance with the statutory requirements. Since appellants have shown no zone of interest personal to them that would be invaded by the certification process, they have no standing *1286 to contest the Board's decisions on the applications generally. See ASI Inc. v. Florida Public Service Comm'n, 334 So.2d 594 (Fla. 1976). For the reasons quoted from the appealed order, supra, we approve the denial of appellants' standing based on the allegations of economic injury upon the rationale in Agrico Chemical Co. v. Department of Environmental Regulation, 406 So.2d 478, and Shared Services, Inc. v. State, Department of Health and Rehabilitative Services, 426 So.2d 56.

C.
We likewise conclude that appellants' allegations of the loss of public respect for the medical profession, encroachment on the rights of physicians to practice medicine, and the decline in the quality of eye care and medical treatment available to the public and their patients as a result of the Board's certification of optometrists also are legally insufficient for two reasons.
First, to establish standing on these grounds, assuming that appellants could represent the interests of their patients, appellants must allege facts showing that the diagnosis and treatment of patients by optometrists pursuant to the certificates so issued will cause appellants or the patients injury contrary to the purposes of the statutes. See Village Park Mobile Home Assoc., Inc. v. State, Department of Business Regulation, 506 So.2d 426 (Fla. 1st DCA 1987). They have not done this. The petition contains no allegations of any facts personal to any particular applicant, petitioner, or patient that show that any certified optometrist's exercise of this new privilege would be medically deficient and cause anyone injury. Rather, these allegations appear to question whether optometrists in general should be allowed to qualify and be licensed to administer topical ocular drugs to their patients in a manner formerly reserved by statute to the exclusive domain of medical and osteopathic doctors. This is a policy issue that falls within the the state's police power exercised by the legislature; and, by enacting chapter 86-289, Laws of Florida, to permit optometrists to perform these services, the legislature already has determined this issue adversely to appellants' position. We decline to recognize that under the present statutory scheme appellants have standing to challenge the propriety of each certification on grounds and policy considerations that the legislature already has considered and rejected. Appellants cite no authority to support the contention that this statutory scheme is beyond the state's police power and is thus invalid.
Second, appellants' argument that they are authorized to represent their patients' rights in this proceeding on the authority of Singleton v. Wulff, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), is likewise rejected. In that case a Missouri statute was challenged as unconstitutional because it would prevent the plaintiff physicians from providing to their patients needed medical care that would otherwise be performed but for the statutory prohibition. Here, there are no allegations of fact that the plaintiffs would be prevented from performing needed medical services sought by their patients but for the certification of optometrists. The facts and rationale of Wulff, being vastly different, are materially distinguishable. See note 5, supra.

D.
Petitioners argue that the Board's order must be reversed on the authority of our decision in Florida Medical Association v. Department of Professional Regulation, 426 So.2d 1112 (Fla. 1st DCA 1983). We disagree. In that case, some of these same petitioners filed a petition in a section 120.54 rulemaking proceeding to challenge the validity of the Board's proposed rule 21Q-3.10. The proposed rule would have authorized optometrists to administer and prescribe certain drugs that up to that time only licensed physicians dispensed. The proposed rule was based upon the Board's interpretation of the organic statute in chapter 463 as providing implied authority for optometrists to administer prescription drugs. The petitioners in that case, as they do in the case now before us, alleged that they were, or represented, licensed physicians practicing ophthalmic medicine whose economic interest would be adversely *1287 affected if optometrists were permitted to enter the field. They further alleged that the proposed rule constituted an invalid exercise of delegated authority because no statutory provision in chapter 463 authorized optometrists to administer or prescribe legend drugs, as that privilege was the exclusive domain of physicians licensed under chapter 458 and 459. See §§ 458.305(3) and 459.003(3), Fla. Stat. (1981). In ruling that the petitioners in that case had standing, we explicitly noted that the fact that petitioners challenged the validity of the proposed rule as an invalid delegation of legislative authority distinguished the case from Agrico Chemical Company v. Department of Environmental Regulation, 406 So.2d 478, "for in that case there was no contention of unlawful exercise of authority, only opposition (by competitors of Agrico) to DER's granting of a permit under the environmental laws, based solely on claims by the competitors of Agrico that their economic interests would be affected." 426 So.2d at 1114-15. We also attached significance to "the absence of a claim of illegality of the proposed agency action" as distinguishing other decisions involving licensing proceedings, including Shared Services, Inc. v. State, Department of Health and Rehabilitative Services, 426 So.2d 56, "since Shared Services essentially alleged only potential competitive economic injury as the basis for their objections to Shands' application for license and certification." 426 So.2d at 1115. Commenting that if petitioners were correct the proposed rule would authorize acts by optometrists that would be unlawful under chapters 458 and 459, we upheld their standing to challenge the validity of the rule in a 120.54 proceeding based on the alleged injurious effect on petitioners' economic interest, stating:
We find, contrary to the ruling of the hearing officer, that the petition in behalf of the physician and the medical associations satisfies the "zone of interest" requirement. We note appellee's contention that appellants must assert an injury solely within the "zone of interest" protected by Chapter 463. This is incorrect. Since the crux of the controversy involves the claim that Chapter 463 does not authorize the rule, it is obvious that the effect of other statutes must be considered in determining standing. Neither Shared Services, supra, nor Agrico Chemical, upon which it relies, is authority for the proposition that the basis for standing must be found within the particular statute being implemented by agency action. These cases simply illustrate the rule that in licensing or permitting proceedings a claim of standing by third parties based solely upon economic interests is not sufficient unless the permitting or licensing statute itself contemplates consideration of such interests, or unless standing is conferred by rule or statute, or based upon constitutional grounds.

426 So.2d at 1117-18 (emphasis added). A hearing officer subsequently invalidated the proposed rule, and this court affirmed that decision. Board of Optometry v. Florida Medical Association, Inc., 463 So.2d 1213 (Fla. 1st DCA 1985), pet. for rev. denied, 475 So.2d 693 (Fla. 1985).
Subsequent legislative amendments have materially changed the present situation from that considered by the court in Florida Medical Association. When the legislature enacted chapter 86-289 authorizing optometrists to "administer and prescribe topical ocular pharmaceutical agents as provided in this section for the diagnosis and treatment of ocular conditions of the human eye and its appendages without use of surgery or other invasive techniques," § 463.0055(1), Fla. Stat. (1987), the privilege to administer and prescribe all drugs no longer remained within the "exclusive domain" of physicians licensed by chapters 458 and 459. Thus, petitioners are not now in a position to assert that optometrists should not be certified to administer or prescribe ocular drugs.
Our decision in this case again confirms that standing in a licensing proceeding may well have to be predicated on a somewhat different basis than standing in a rule challenge proceeding, as discussed in Florida Medical Association, 426 So.2d 1112. We are aware that Farmworker *1288 Rights Organization, Inc. v. Department of Health and Rehabilitative Services, 417 So.2d 753, 754 (Fla. 1st DCA 1982), stated, "For the purpose of standing, there is no significant difference between a section 120.56(1) and a section 120.57(1) proceeding." But that statement must be read in the context of the facts and rationale in that opinion. There can be, as this case illustrates, a difference between the concept of "substantially affected" under section 120.56(1) and "substantial interests" under section 120.57(1).
We also recognize that limiting standing to participate in licensing proceedings in the manner we have done in this case has been criticized by Professor Patricia Dore in her analytically enlightening article on standing in Florida administrative proceedings. See Dore, Access to Florida Administrative Proceedings, 13 Fla.St.U.L.Rev. 967, 1082-1110 (1986). However, we cannot apply the broad definition of standing Professor Dore suggests,[10] unless the Florida Supreme Court recedes from the several opinions Professor Dore has criticized or the legislature enacts appropriate amendments to chapter 120 explicitly adopting a similar broad definition of standing. A decision to accord professionals such as medical and osteopathic physicians standing to participate in the licensing proceedings of other competing professionals who perform overlapping services more properly lies in the hands of the legislature.
AFFIRMED.
SHIVERS and THOMPSON, JJ., concur.
NOTES
[1] This continuing dispute has produced substantial litigation in administrative and circuit court proceedings, most of which has eventually found its way to this court. Prior cases in this court include: State, Dept. of Professional Regulation v. Broussard, et al., Case No. 87-238 (dismissed); State, Dept. of Professional Regulation v. Adams, Case No. 260 (dismissed); Board of Optometry v. Florida Medical Association, 463 So.2d 1213 (Fla. 1st DCA 1985); Florida Medical Assoc. v. Department of Professional Regulation, 426 So.2d 1112 (Fla. 1st DCA 1983); Florida Society of Ophthalmology v. State, Department of Professional Regulation, Case No. 87-2126 (dismissed). Cases currently pending in this court, in addition to this, include: Florida Society of Ophthalmology v. State, Department of Professional Regulation, Case No. BS-396; State, Board of Optometry v. Florida Society of Ophthalmology, Case No. 88-142.
[2] Section 463.0055, created by chapter 86-289, provides in part pertinent to this case:

(1) Certified optometrists may administer and prescribe topical ocular pharmaceutical agents as provided in this section for the diagnosis and treatment of ocular conditions of the human eye and its appendages without the use of surgery or other invasive techniques... .
(2) The board shall issue certification for the administration and prescription of topical ocular pharmaceutical agents in the diagnosis and treatment of ocular conditions to licensed practitioners who have completed the appropriate forms as required by the board and who have submitted proof of fulfilling all of the following requirements:
(a) Successful completion of at least 110 hours of approved transcript-quality coursework and clinical training in general and ocular pharmacology, as determined by the board... .
(b) Completion of at least 1 year of supervised experience in differential diagnosis of eye disease or disorders as part of the optometric training or in a clinical setting as part of optometric experience.
(c) Successful completion of an examination approved by the board which tests knowledge of general and ocular pharmacology with particular emphasis on the topical application of pharmaceutical agents for the eye and side effects of such pharmaceutical agents.
[3] Rule 21Q-10.001 provides:

Application for Certification. To be certified to administer and prescribe topical ocular pharmaceutical agents a licensed practioner must submit a completed application form provided by the Board, remit the application fee for certification specified in Rule 21Q-6.001(9), and demonstrate compliance with the following requirements:
(1) Successful completion of at least 110 hours of Board approved transcript quality coursework and clinical training in general and ocular pharmacology conducted by an accredited institution which has facilities for both didactic and clinical instruction in pharmacology. The institution must document the applicant's successful completion. The Board will accept coursework and clinical training in general and ocular pharmacology received by the applicant during his basic optometric curriculum or at post-graduate courses if this coursework and training was provided by a Board approved school of optometry or equivalent educational entity;
(2) Completion of at least one (1) year of supervised experience in differential diagnosis of eye diseases or disorders. The one year of supervised experience shall be received either during optometric training or in a clinical setting as part of optometric experience. The requisite one year of supervised experience in a clinical setting may be obtained in an academic or non-academic environment. For the purpose of this rule, one year of supervised experience in an academic setting is understood to mean three (3) quarters or two (2) semesters and one (1) year of supervised experience in a non-academic setting is understood to mean a twelve month period.
(3) Successful completion of a Board approved examination testing knowledge of general and ocular pharmacology with particular emphasis on the topical application of pharmaceutical agents. In order to be approved by the Board, the examination must have been administered in a Board approved school of optometry or at the conclusion of a post-graduate course conducted by a Board approved school of optometry, and the examination must be approved by the Board.
[4] The challenges to the validity of the rule and application form pursuant to section 120.56 were not dismissed but were severed and proceeded to hearing. The appeal of the hearing officer's final order holding the rule invalid is now pending in this court, case number 88-142. This decision, therefore, is limited to the question of standing in each individual certification proceeding.
[5] Notwithstanding these allegations we do not consider the propriety or the right of these persons to have standing to maintain an administrative "class action" under chapter 120 to represent similarly situated persons other than in the limited sense hereinafter discussed.
[6] The propriety of that ruling is before this court in case number 88-142, so we intimate no view thereon in this opinion.
[7] See, e.g., §§ 120.53(5), 120.54(4)(a), 120.56(1), 120.565, 120.57(1), Fla. Stat. (1987).
[8] The statutes contain no definition of "substantial interest," and this court has said it would not attempt to fashion a comprehensive one; however, it does seem to be agreed that "the legislature intended by the passage of Section 120.57(1) to create a broad avenue of redress for many persons variously situated, and specifically that `substantial interests' contemplates rights not more restrictive but more expansive than those afforded by the predecessor statute which provided for `legal rights, duties, privileges or immunities,' Section 120.22, Florida Statutes (1973)." Hasper v. Department of Labor & Employment Security, 459 So.2d 400, 402 (Fla. 1st DCA 1984); see generally Dore, Access to Florida Administrative Proceedings, 13 Fla.St.U.L.Rev. 967, 1062 et seq. (1986).
[9] See note 5, supra.
[10] Id. at 1065, where the author states:

Each of the following persons, therefore, should be able to compel the commencement of the adjudicatory process:
* * * * * *
(3) any person whose important or significant personal concerns will be acted on or changed in some way in a proceeding in which he makes an appearance and in which the substantial interests of a party are decided, settled, or resolved finally by an agency;
This broad definition of party would seemingly authorize any person who has formed an "important or significant personal concern" about the medical treatment of the human eye, whether a trained physician or not, to participate in the licensing or certification of optometrists under the subject statute, and indeed, participate in the licensing of any allopathic or osteopathic physician being authorized to practice medicine.