373 So.2d 960 (1979)
William POLK, Individually and On Behalf of All Others Similarly Situated, Appellant,
v.
The SCHOOL BOARD OF POLK COUNTY, Florida, Appellee.
No. 79-78.
District Court of Appeal of Florida, Second District.
August 10, 1979.
*961 Stephen C. Watson, of Hahn, Breathitt, Roberts & Watson, Lakeland, for appellant.
C.A. Boswell, Jr., of Boswell, Boswell & Conner, Bartow, for appellee.
GRIMES, Chief Judge.
This is an appeal from a final agency action of the Polk County School Board restructuring high school attendance zones in Lakeland. Appellant represents a group known as Concerned Citizens, South Lakeland, who are adversely affected because the new attendance lines will require their children to attend a different school. By definition, the action of the school board in adopting the attendance plan constituted the making of a rule. Section 120.52(14), Florida Statutes (Supp. 1978). We have jurisdiction pursuant to Section 120.68, Florida Statutes (Supp. 1978).
The change in attendance lines was made necessary by the construction of Lake Gibson Senior High School which is scheduled to open for the 1979-1980 school year. Lake Gibson will be the third high school in the Lakeland area, joining Lakeland Senior High and Kathleen Senior High, both of which are already in operation.
At the November 8, 1978, meeting of the Polk County School Board, Superintendent Homer Addair presented an attendance plan for the three schools. After receiving the plan, the school board set a public hearing for November 28, 1978. At the hearing Bruce Wagner, the west area school superintendent for Polk County, explained the plan and the criteria used in its preparation. After Mr. Wagner's presentation, some parents spoke in favor of the proposal. However, several members of Concerned Citizens spoke against it, because it would force their children, who had in the past attended Lakeland High School, to attend Kathleen High. They argued that it was an unwarranted disruption of their children's school life and pointed to the fact that it would be the third or fourth such disruption. They also noted that Kathleen High School was a greater distance from their homes than Lakeland High.
On December 11, 1978, Concerned Citizens presented Superintendent Addair's office with a detailed report of two alternative attendance plans, both of which would *962 have kept their children at Lakeland High. However, after considering these plans, Addair declined to make any changes in his recommended plan. On December 13, 1978, the school board unanimously adopted the superintendent's proposal. This timely appeal followed.
Appellant argues first that there was no competent substantial evidence to support the school board's adoption of the superintendent's plan. Actually, there was no evidence at all in a judicial sense, because the determination of school boundaries was a quasi-legislative decision and those who presented their views at the public hearing did so in the context of a town meeting. Judicial review of quasi-legislative action is more limited than that of quasi-judicial action. Broward County v. Administration Commission, 321 So.2d 605 (Fla. 1st DCA 1975). The agency rule-making function involves the exercise of discretion, and absent a flagrant abuse of that discretion a court may not substitute its judgment for that of the agency. Section 120.68(12), Florida Statutes (Supp. 1978); Citizens of Florida v. Mayo, 357 So.2d 731 (Fla. 1978).
We can understand the dissatisfaction of parents whose children must make an unwanted change in schools. We might have drawn boundaries different from those which the school board drew. Yet, the reasons given in support of the plan amply demonstrate that the plan was not arbitrarily drawn. The members of the school board faced a difficult decision, but they made it within the proper exercise of their discretion.
Appellant makes another argument for reversal which we should address. He contends that we must invalidate the school board's action because the board failed to prepare an economic impact statement before adopting the attendance plan. Section 120.54(2), Florida Statutes (Supp. 1978), requires each agency prior to the adoption of a rule to provide information on its proposed action by preparing a detailed economic impact statement. The preparation of an economic impact statement is a procedural aspect of an agency's rule-making authority. Thus, Section 120.68(8), Florida Statutes (Supp. 1978), governs our review in this area. It provides in pertinent part that:
(8) The court shall remand the case for further agency action if it finds that either the fairness of the proceedings or the correctness of the action may have been impaired by a material error in procedure or a failure to follow prescribed procedure.
We read this section to mean that even though an agency has committed a procedural error, we must affirm the agency's action unless the error renders the ruling unfair or incorrect. In other words, the section is actually a statutory harmless error rule.
The items required by the statute to be included in the economic impact statement are as follows:
1. An estimate of the cost to the agency of the implementation of the proposed action, including the estimated amount of paperwork;
2. An estimate of the cost or the economic benefit to all persons directly affected by the proposed action;
3. An estimate of the impact of the proposed action on competition and the open market for employment, if applicable; and
4. A detailed statement of the data and method used in making each of the above estimates.
Given the fact that the decision to build Lake Gibson High School at a specific location had already been made, we cannot see how any of the foregoing items were particularly relevant to the establishment of the school boundary lines. Moreover, to the extent that any of the items may have been relevant, the record shows that they were considered during the decision-making process. When Mr. Wagner explained the superintendent's proposal at the public hearing, he discussed such economic factors as bus transportation of students and the use of portable school rooms, and the Concerned *963 Citizens' report of December 11, 1978, also discussed these matters. Thus, in this instance the absence of the economic impact statement did not harm the school board's decision-making process or adversely affect its decision.
We hasten to add that by this opinion we are not saying that an agency is at liberty to ignore the economic impact statement procedure anytime it engages in rule making. We can think of any number of situations where the failure to prepare an economic impact statement would be fatal to the validity of the rule. However, we have concluded that in this particular rule-making action, which was limited to the setting of attendance zones, the failure to submit an economic impact statement was harmless error.
AFFIRMED.
HOBSON and DANAHY, JJ., concur.