425 So.2d 554 (1982)
Betty CORTESE, Etc., et al., Appellants,
v.
The SCHOOL BOARD OF PALM BEACH COUNTY, Florida, Appellee.
Nos. 82-809, 82-988.
District Court of Appeal of Florida, Fourth District.
December 1, 1982.
Rehearing Denied February 9, 1983.
*555 Frank A. Kreidler, Lake Worth, for appellants.
Bruce Darwin Spector, West Palm Beach, for appellee.
GLICKSTEIN, Judge.
This is a consolidated appeal from two orders of the School Board of Palm Beach County. The first closed South Grade Elementary School in Lake Worth, changing the boundaries for the children who had been attending it. The second denied appellants a formal hearing pursuant to section 120.57(1), Florida Statutes (1981). Appellants are (a) two mothers, individually as well as in behalf of their children and others similarly situated; (b) the mayor of the City of Lake Worth; and (c) a resident of that city.
The case involves several issues, the first of which is appellants' standing, administratively and judicially. The parents of the children who were attending South Grade were parties whose substantial interests were affected by the closing of the school and the changing of the school boundaries. School Board of Broward County v. Constant, 363 So.2d 859 (Fla. 4th DCA 1978);[1]see Polk v. School Board of Polk County, 373 So.2d 960 (Fla. 2d DCA 1979); cf. School Board of Orange County v. Blackford, 369 So.2d 689 (Fla. 1st DCA 1979).[2] We fail to perceive such interests on the part of the non-parents/appellants; therefore, we dismiss them from this appeal.
The second issue is whether the board erred in denying the parents' petition for formal hearing. The parents in this case were involved in administrative rulemaking by the school board. Accordingly, their rights were codified by section 120.54(16), Florida Statutes (1981),[3] and chapters 28-3 and 28-5, Florida Administrative *556 Code (1981).[4] The petition, had it been timely,[5] and the decision thereon, should have involved, respectively, allegations and a determination that the rulemaking proceeding was inadequate to protect the petitioners' interests. Neither the petition[6] nor the order denying the petition[7] addressed the sole relevant issue. Under such circumstances, the contention that the board erred in denying the petition for formal hearing never really gets off the ground. Further, we see nothing in the record to justify the need for a drawout.
The third issue is whether the failure of the board to notice its workshop meeting of January 18, 1982, as required by section 120.53(1)(d), Florida Statutes (1981),[8] was fatal to the ultimate decision it reached at its regular meeting on March 3, 1982. Appellee has failed to provide in the record any proof of compliance with the statute. The effect of failure to comply with section 120.53 is recited in section 120.68(8), which provides:
The court shall remand the case for further agency action if it finds that either the fairness of the proceedings or the correctness of the action may have been impaired by a material error in procedure or a failure to follow prescribed procedure. Failure of any agency to comply with s. 120.53 shall be presumed to be a material error in procedure.
There was, indeed, a presumption of material error in procedure.[9] However, we find *557 such presumption to have been overcome by the facts at hand; and that the error did not occasion an unfair or incorrect decision in closing the school and changing the boundaries. The facts in this case are altogether different than those in Blackford v. School Board of Orange County, 375 So.2d 578 (Fla. 5th DCA 1979), wherein numerous determinative, non-public meetings were held among board members and the superintendent in the latter's office.
In the present case, the record reflects that there was a workshop on January 18, 1982, at which Proposal V A for the closing of South Grade Elementary School was tendered to the board[10] along with recommendations involving other schools. It read as follows:
South Grade Elementary School is the smallest elementary school in the District with an enrollment of approximately 186 students in grades K-6. It is also one of the oldest schools in the county having been built in 1926. The school has been recommended for closing by the State Department of Education in the last two School Plant Surveys. It is recommended that the students attending South Grade be reassigned to nearby schools.
South Grade Elementary School students would be reassigned to the following schools: Barton Elementary School (105 students in grades K-6), North Grade Elementary School (63 students in grades K-6), Poinciana Elementary School (11 students in grades K-5), and Lantana Middle School (2 students in grade 6). It has been estimated that closing South Grade Elementary would result in a savings to the District in salaries and utilities costs of approximately $125,000 depending on its future use.
Such proposal was directly responsive to the expressed intent of the legislature in section 230.23(4)(b), Florida Statutes (1981).[11] Thereafter, public meetings were held in February and March; and at all of these meetings South Grade was only one of several schools involved in boundary changes.
Remarks of the board members at the meeting of March 3, 1982, with respect to South Grade indicate that they met with representatives of the concerned parents who opposed the closing of this venerable, popular school; discussed the subject with other school principals; visited the site; and considered the economics of closing as well as the alternative proposals offered by those opposed to the closing. There was apparently substantial media coverage of the subject for weeks preceding the ultimate vote of 6 to 1 in favor of the superintendent's recommendation. There is nothing in the record to show that the decision-making was clandestine or sinister, or that the public meetings were merely shells into which non-public decisions were poured, or that the ultimate decision was anything other than the result of bona fide "town meetings."
The fourth issue is the merits of the decision to close the school and change the boundaries. We endorse the following premise set forth in Polk:

*558 The agency rule-making function involves the exercise of discretion, and absent a flagrant abuse of that discretion a court may not substitute its judgment for that of the agency. Section 120.68(12), Florida Statutes (Supp. 1978); Citizens of Florida v. Mayo, 357 So.2d 731 (Fla. 1978).
373 So.2d at 962. At the meeting of March 3, 1982, the superintendent recited that South Grade had not been cost effective for years. He appropriately questioned the wisdom of investing additional funds into the school for necessary art and music facilities. The ultimate decision appears to be the result of the board's concern for the quality of the children's education.[12] Accordingly, as to those appellants who remain involved in this appeal, we affirm both orders.
WALDEN, J., concurs.
BERANEK, J., concurs in conclusion only.
NOTES
[1] It is unfortunate that this court's opinion in Constant was not part of the decision making process at the board level (particularly in a case with as much public interest as this one) nor made known to this court when a stay was being sought. While the decisions may not have been affected, the deliberations thereon would have been. The first reference to the decision by the parties was by appellee's notice of supplemental authority tendered after all of the briefs were filed in this court. This case leads us to observe that the assistance of computerized research may be affected by the selectivity of the programmers as horse and buggy research may be affected by the selectivity of editors. In this case the decision in School Board of Orange County v. Blackford, 369 So.2d 689 (Fla. 1st DCA 1979), appears under Schools and School Districts, key number 11, and the Constant decision under key number 30. Neither case contains a key number common to both, notwithstanding the common issue of standing.
[2] We disagree that parents with children in attendance do not have the right to seek review in the District Court of Appeal of a school board's decision to close a school or change school boundaries. It is anathema to us to conclude that no avenue of judicial relief is available to them.
[3] Section 120.54(16) provides:

Rulemaking proceedings shall be governed solely by the provisions of this section unless a person timely asserts that his substantial interests will be affected in the proceeding and affirmatively demonstrates to the agency that the proceeding does not provide adequate opportunity to protect those interests. If the agency determines that the rulemaking proceeding is not adequate to protect his interests, it shall suspend the rulemaking proceeding and convene a separate proceeding under the provisions of s. 120.57. Similarly situated persons may be requested to join and participate in the separate proceeding. Upon conclusion of the separate proceeding, the rulemaking proceeding shall be resumed.
[4] The entire "drawout" procedure is analyzed in Waas, The Limits Upon the Administrative Procedure Act's Drawout Remedy, 52 Fla.B.J. 815 (1978). See also the general discussion of rulemaking and standing vis a vis chapter 120 in Waas, Strickland & Kerns, Rulemaking Proceedings: Input, Challenge and Initiation, 53 Fla.B.J. 541 (1979); and Kavanaugh, Administrative Standing Under Chapter 403: What Does the Jerry Case Mean?, 53 Fla.B.J. 729, 730-31 (1979), wherein the latter author observes:

Each type of procedure provided in Chapter 120 defines its own petitioner, and the "party" status required to initiate each type of proceeding varies with the proceeding requested. For example, merely "affected persons" may present evidence and argument, and request a public hearing during the more informal proceedings for adoption of a proposed rule. But, it takes a "substantially affected person" to challenge a rule through a § 120.54(4) or 120.56 rule challenge proceeding, or to become a party or intervenor to such a proceeding. Persons whose "substantial interests are affected" by a rule or proposed rule  or lack of a rule  may petition an agency to adopt, amend or repeal a rule, or to provide the minimum information about a proposed rule, as can any "person regulated by an agency." Those persons with "substantial interests" can, upon appropriate showing that those substantial interests are not being adequately protected in the informal forum of rulemaking, "draw out" of the informal proceeding and trigger a formal adjudicatory proceeding under § 120.57 to find facts about the rule in question. As the procedure increases in formality, so does the required showing of a personal stake in the action.
(Footnotes omitted; emphasis original.)
[5] Chapter 28-5.604(1), Florida Administrative Code (1981), provides:

At any time prior to the conclusion of a public hearing conducted under the provisions of Section 120.54(3), any person may assert that his substantial interests will be affected in the proceedings, and shall affirmatively demonstrate that the rulemaking proceedings do not provide an adequate opportunity to protect his substantial interests and request that the hearing be conducted under the provisions of Section 120.57 to the extent necessary to provide that opportunity and to protect his substantial interests.
[6] The petition was not filed until April 20, 1982. Accordingly, although the petition raised several considered legal grounds, counsel then representing petitioners may have considered the statutory ground to be moot.
[7] The board's order was not summary in nature and discussed various sections of chapter 120, Florida Statutes (1981). Nevertheless, as to section 120.57(1), it simply turned on the Blackford decision and held that petitioners lacked standing for such a hearing. Petitioners/parents did not lack standing for a drawout; they failed to establish grounds.
[8] Section 120.53(1)(d) provides that agencies "shall give notice of meetings, hearings, and workshops in the same manner as that prescribed for rulemaking in subsection 120.54(1)... ."

Section 120.54(1)(a) provides that notice of intent by an educational unit to adopt a rule shall be made by publication, mail, and posting.
[9] Section 230.17(2), Florida Statutes (1981), which provides for notice of regular and special meetings must be read in pari materia with section 120.53(1)(d) which requires notice of workshops in rulemaking.
[10] We have considered the affidavits attached to the parties' appendices as if they had been filed as suggestions to the court. They indicate that tape recordings were available of relevant portions of the meetings of January 18, 1982, and February 8, 1982, for the preparation of transcripts. Appellants apparently elected not to obtain same at their expense pursuant to chapter 28-3.31(5), Florida Administrative Code (1981).
[11] Section 230.23(4)(b) includes within the powers and duties of school boards:

(4) ESTABLISHMENT, ORGANIZATION, AND OPERATION OF SCHOOLS.  Adopt and provide for the execution of plans for the establishment, organization, and operation of the schools of the district, as follows:
... .
(b) Elimination of school centers and consolidation of schools.  Provide for the elimination of school centers within the district and for the consolidation of schools whenever the needs of pupils can better and more economically be served at other school centers than those which they have been attending.
[12] We consider the absence of an economic impact statement to be harmless error. School Board of Broward County v. Gramith, 375 So.2d 340 (Fla. 1st DCA 1979); Polk v. School Board of Polk County, 373 So.2d 960 (Fla. 2d DCA 1979). There has been no showing that its absence either harmed the board's decision-making process or adversely affected its decision. The superintendent's recommendation plainly expressed a saving of $125,000 by closing the school.

Similarly, we believe appellants' claim of error occasioned by the absence of requirements and procedures for the closing of schools warrants cursory mention only. The economics of this school's continued operation was considered in a rulemaking framework. The rulemaking in this case did not require administrative tools in addition to sections 120.53 and 120.54, unlike the situation in Witgenstein v. School Board of Leon County, 347 So.2d 1069 (Fla. 1st DCA 1977), which required rules of practice relating to assessment of personnel.