424 So.2d 879 (1982)
PLANTATION RESIDENTS' ASSOCIATION, INC., et al., Appellants,
v.
SCHOOL BOARD OF BROWARD COUNTY, Florida, Appellee.
No. AN-473.
District Court of Appeal of Florida, First District.
December 16, 1982.
Rehearing Denied January 26, 1983.
*880 Lawrence Bunin, Hollywood, for appellants.
Edward J. Marko of Marko, Stephany & Lyons, Fort Lauderdale, for appellee.
WIGGINTON, Judge.
The Plantation Residents' Association, a group of concerned parents of public school students in Broward County, appeals from an order of the Division of Administrative Hearings that let stand certain high school attendance area boundary changes recently enacted by the Broward County School Board. The parents have claimed that the proposed boundary changes were arbitrary and capricious, that they were unlawfully made without benefit of a proper statutorily-required economic impact statement,[1] and that they constitute a violation of the affected students' rights to equal protection.
This controversy involves six Broward County high schools: Taravella and Western High, two new schools; Dillard and Ely, which are predominantly black; Pompano and Plantation, predominantly white. Under the boards' plan, some Dillard and Ely students will be going to the new schools, and certain white Plantation and Pompano students will "replace" them in the boards' effort to minimize the anticipated decrease in the ratio of whites to blacks at Dillard and Ely.
The parents' primary argument against the proposed rule[2] is that the board was misinformed or misled in its decision making  misinformed as to the facts, and misled in the belief that the county may be legally required to continue its artificial control of the racial mixture at Dillard and Ely. The parents forcefully argue that once a school system has desegregated, the school board is not required to correct future racial imbalances that may occur as a result of natural demographic shifts, citing Swann v. Charlotte-Mecklenburg, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971), and other authorities. Because white students will be zoned out of Dillard and Ely and into the newly built schools simply because of natural demographic shifts, the parents contend, the board, misunderstanding its obligations, will needlessly require a readjustment in the Dillard and Ely racial mixtures.
We do not believe this argument merits reversal. First, even assuming that the parents' interpretation of the law is correct, there is no assurance that a federal court would find that the new schools have appeared strictly as a result of natural demographic shifts or that their attendance zones have been drawn to avoid de facto segregation.
Second, despite the uncertainty about whether the board was legally compelled to introduce more white students at Dillard and Ely, it is clear that the school board had the authority to decide that the maintenance of such a racial mixture may be a legitimate board policy. See generally Darville v. Dade County School Board, 497 F.2d 1002 (5th Cir.1974). The school board is composed of elected officials who serve a quasi-legislative function when they draw *881 school zone boundary lines. A reviewing court may overturn a boundary line decision only when the school board has given in to a flagrant abuse of discretion. See Polk and authorities cited therein. That is why we are compelled to sustain the board's action. Where, as here, the school board makes a decision within its discretion, the aggrieved parents' remedy is not judicial, but political.
In short, we find no error in the hearing officer's order regarding the parents' claim that the proposed boundary lines were so arbitrarily and capriciously drawn as to be unlawful.
Similarly, we must affirm the hearing officer on the equal protection issue. The parents have not demonstrated that, once the board adopted a policy of maintaining a racial mixture at the schools, the rezoning of the school boundaries was an irrational or unreasonable means to implement that policy. Accordingly, the hearing officer did not err in rejecting the parents' constitutional challenge.
Finally, we affirm the hearing officer's findings that any deficiencies in the boards' economic impact statement did not impair the fairness of the proceedings. The requirements of Section 120.54(2) (1981) do not oblige the hearing officer to reverse a school board decision solely on the basis that the attendant economic impact study appears to be facially deficient. Such a standard would add a transparent technicality to the rule-making process and would exalt form over substance. See Florida-Texas Freight, Inc. v. Hawkins, 379 So.2d 944 (Fla. 1980). Here, it is arguable that the school board's economic impact statement was less than thorough. However, if proceedings are not rendered unfair, or if the action is not found to be incorrect, then minimal deficiencies in an economic impact statement will not constitute reversible error. Florida-Texas Freight; School Board of Broward County v. Gramith, 375 So.2d 340 (Fla. 1st DCA 1979). The hearing officer acted within his authority in finding no prejudicial error occurred.
The order of the Division of Administrative Hearings is AFFIRMED.
SHAW and JOANOS, JJ., concur.
NOTES
[1] Sec. 120.54(2) requires that each agency provide an "adequate" economic impact statement before adopting, amending or repealing any rule.
[2] The process of drawing school zone boundary lines is rule-making within the meaning of Section 120.54, Fla. Stat. (1981). See Polk v. School Board of Polk County, 373 So.2d 960 (Fla. 2d DCA 1979).