439 So.2d 937 (1983)
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellant,
v.
Gladys WRIGHT, et al., Appellees. and
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellant,
v.
Larry A. MITCHELL d/b/A Heritage Elderly Care Facility, Appellee.
No. AP-145.
District Court of Appeal of Florida, First District.
October 11, 1983.
*938 Maureen L. McGill, Dist. I Legal Counsel, Pensacola, for appellant.
Bruce A. McDonald of Emmanuel, Sheppard & Condon, Pensacola, for appellee Ronnie Mitchell d/b/a Mitchell's Adult Congregate Living Facility.
Antony E. Fiorentino, Pensacola, for appellee Larry A. Mitchell d/b/a Heritage Elderly Care Facility.
WIGGINTON, Judge.
The Department of Health and Rehabilitative Services (department) appeals from an administrative hearing officer's conclusion, following a section 120.56 hearing, that Florida Administrative Code Rule 10A-5.18(5) constitutes an invalid exercise of delegated legislative authority. Specifically, the hearing officer found subsection 5 of Rule 10A-5.18 to be (1) invalid as being improperly promulgated due to an inadequate economic impact statement, section 120.54(2)(c), Florida Statutes (Supp. 1980),[1] and (2) invalid as not encompassed by the legislative grant of authority found in section 400.441(1), Florida Statutes (Supp. 1980).[2] We affirm the hearing officer's *939 conclusion regarding the economic impact statement, thereby obviating consideration of his ruling on the statutory authority for the rule. See Division of Workers' Compensation v. McKee, 413 So.2d 805 (Fla. 1st DCA 1982); General Development Utilities Inc. v. Florida Public Service Commission, 385 So.2d 1050 (Fla. 1st DCA 1980).
For this Court gratuitously to consider and rule upon the merits of the department's authority in promulgating the rule would be to resolve that issue without the benefit of the economic impact statement we deem essential for consideration by the department in its rule-making process. Were the department to have had the benefit of the impact information, its action on the rule, as well as that of the hearing officer, may or may not have been different; that is yet to be seen.
Rule 10A-5.18 was derived from chapter 400, Florida Statutes, relating to Adult Congregate Living Facilities (ACLFs), as extensively amended in 1980. See ch. 80-198, Laws of Florida. ACLFs are facilities designed to provide live-in accommodations for individuals not in need of a nursing home or hospital care, and to render personal services as defined in section 400.402(8), Florida Statutes. Pertinent to this case is the 1980 revision to the section adding that "personal services" shall not be construed as including "the provision of medical, nursing, dental, or mental health services by the staff of a facility." Ch. 80-198 s. 14, Laws of Florida (emphasis added).
Pursuant to the statutory authority stated in section 400.441(1)(f), Florida Statutes (Supp. 1980), directing the department to "promulgate, publish, and enforce rules" designed to implement chapter 400 in order to provide "reasonable and fair minimum standards in relation to: ... (f) [t]he care and maintenance of residents" of ACLFs, the department undertook a general revision of chapter 10A-5 of the Florida Administrative Code relating to minimum standards for ACLFs. Prior to conducting the formal rulemaking procedures of the Florida Administrative Code, the department formed an ad hoc committee, consisting of department representatives, health professionals, fire safety inspectors, and representatives from the Department of Insurance, the Florida Adult Care Association, the Florida Association of Homes for the Aged, and owners and residents, or their representatives, of ACLFs. Of particular interest to the committee was the alleged providing of nursing services by ACLFs in the form of bedside rails and chest restraints. Relying on the opinions of their own medical and nursing representatives participating on the committee, the department drafted Rule 10A-5.18 which sets forth resident care standards for ACLFs and regulates the types of individuals who may be admitted to such facilities, the services allowed, the medical examinations required and the procedures necessary for the handling and storage of drugs in those facilities. In particular, subsection 5 provides:
Facilities shall not use physical restraints such as jacket restraints, body or limb restraints or any other similar restraints. Full bedside rails shall not be used. Half *940 bedside rails shall be used only with the written order of the resident's physician.
It was the department's position that the restraints and bedside rails constituted "nursing services" prohibited in ACLFs by section 400.402(8).
Following the procedures set forth in section 120.54, Florida Statutes (Supp. 1980), the department notified the public of its intent, and scheduled public meetings at which interested individuals could voice their opposition, if any, to the proposed rules. Notice of the proposed rules was sent to all ACLF operators. When public hearings on the rules were held, appellees, who are owners and operators of certain ACLFs in Escambia County, challenged neither the proposed rules nor the appended economic impact statement, which generally outlined the estimated cost of promulgation of the rules, the costs and benefits of the proposed rules to those persons directly affected thereby, as well as the rules' effect on competition and the open market by specifying the data and methods used in arriving at those estimations. The rules were thereafter promulgated and became effective as of May 14, 1981.
In November of 1981, appellees filed their petition requesting a hearing, pursuant to section 120.56, Florida Statutes, for the purpose of determining the validity of subsection 5 of Rule 10A-5.18. Specifically, for purposes of this opinion, appellees contended subsection 5 amounts to an invalid exercise of delegated legislative authority in that the economic impact statement relating to it was insufficient. They pointed out that the statement, in discussing the costs and benefits of other subsections of Rule 10A-5.18 to persons directly affected, completely ignored 10A-5.18(5), and failed to mention it elsewhere. The department responded that the subsection was not included in the statement because the legislature had already prohibited provision of nursing services, that the rule merely reiterated the legislative prohibition, and, therefore, that the subsection proscribing the use of rails and chest restraints did not realistically impact on the operation of ACLFs. The hearing officer concluded that "law and logic do not support" the department's reasoning. We agree.
Prior to the adoption, amendment, or repeal of any rule, section 120.54(2)(a) mandates that an agency prepare an economic impact statement,[3] the purpose being to promote agency introspection in administrative rule making; to ensure a comprehensive and accurate analysis of economic factors, which factors work together with social factors and legislative goals underlying agency action; to direct agency attention to key considerations and thereby facilitate informed decision making; and finally, to expose the administrative process to public scrutiny. Florida-Texas Freight, Inc. v. Hawkins, 379 So.2d 944, at 946 (Fla. 1979).
However, the Florida Supreme Court has observed that "[t]he procedure envisioned by section 120.54(2)(a) does not ... command adherence to form over substance." Id. Moreover, although section 120.54(2) was amended in 1978 to provide that an agency's failure to include within its rule an "adequate" statement of economic impact is grounds for invalidation of the rule, that provision does not require perfection but only "substantial compliance" with section 120.54(2)(a). Id. As the preparation of a statement of economic impact "is a procedural aspect of an agency's rulemaking authority," it is subject to the "statutory harmless error rule" of section 120.68(8), Florida Statutes, which provides *941 for remand only where a material error in procedure in an administrative proceeding impairs the fairness of the proceedings or the correctness of the action taken. Polk v. School Board of Polk County, 373 So.2d 960, 962 (Fla. 2d DCA 1979); School Board of Broward County v. Gramith, 375 So.2d 340 (Fla. 1st DCA 1979); Plantation Residents' Association, Inc. v. School Board of Broward County, 424 So.2d 879, 881 (Fla. 1st DCA 1982). Thus, the absence or insufficiency of an economic impact statement is harmless error if it is established that the proposed action will have no economic impact, i.e. by its merely implementing already established procedures, or if it is shown that the agency fully considered the asserted economic factors and impact. Division of Workers' Compensation v. McKee, 413 So.2d 805, 806 (Fla. 1st DCA 1982); Florida-Texas Freight, Inc. v. Hawkins; Polk v. School Board of Polk County.
Similarly, in the instant case, the department contends that Rule 10A-5.18(5) merely reiterates the legislative prohibition against nursing services being rendered in ACLFs, and therefore has no economic impact. On the contrary, the testimony of the department supervisor responsible for development and promulgation of the rule established that 10A-5.18(5) was a result of an "evolution of standards." It cannot be logically concluded that the ACLF operators could make the quantum leap from "nursing services" to bedside rails and chest restraints. Thus, the hearing officer correctly found that the rule was "new and unique" and a "codification of agency interpretation, not merely a repetition of a specific statutory standard." Moreover, the record indicates that the department was aware of a percentage of ACLFs using bedside rails and chest restraints, as prescribed by the residents' physicians, and also shows that the use of these items could not be eliminated without economic repercussions on both the residents requiring the devices, who would be forced to enter more expensive nursing homes or to contract for nursing services, and the ACLF operators, who would surely lose a determinable number of residents. Therefore, the hearing officer correctly found that the lack of a statement as to the economic impact of Rule 10A-5.18(5) was not merely harmless error but rendered the rule invalid.
Our holding an agency rule invalid on so narrow a ground is regrettable, especially when we do so on the basis of a challenge brought only after the agency has expended time and energy airing the many and various issues during the rule-making process. That is, we have become skeptical of rewarding challengers a windfall victory on "the merits" by holding the rule invalid for want of a proper economic impact statement, particularly where, as here, the challengers made no effort to argue before the agency the inadequacies of the statement during the public hearings, preferring instead to "hold fire" until the rule was firmly ensconced and could be torpedoed before a hearing officer. This phenomenon defeats the purpose of rule making, "which as far as it goes displaces proof and debate of policy" in evidentiary proceedings. McDonald v. Department of Banking and Finance, 346 So.2d 569, 583 (Fla. 1st DCA 1977).
On the other hand, the materiality of the economic impact statement to the rule-making process cannot be given short shrift. Preparation of the statement is a sobering task, one designed to arrest agency discretion bordering on the despotic, and to channel it through logic and reason to a rational end. Compiled conscientiously, an economic impact statement can shield an otherwise valid rule from collateral attack on the basis that, as applied, the rule would be devastating economically and therefore arbitrary and capricious. Cf. Agrico Chemical Company v. State, Department of Environmental Regulation, 365 So.2d 759, 763 (Fla. 1st DCA 1978) (defining "arbitrary and capricious" in the context of legislative authority for an agency rule).
In the instant case, Rule 10A-5.18(5) could have that devastating economic impact on ACLFs and their residents, or it could have no impact on them at all. None of the affected parties, nor those in the *942 reviewing process, know, because a statement to that effect was not prepared, and the record does not show that the department otherwise realistically considered the impact. For that reason, we affirm the finding of the hearing officer that Rule 10A-5.18(5) is an invalid exercise of delegated legislative authority.
THOMPSON, J., concurs.
ERVIN, C.J., dissents with opinion.
ERVIN, Chief Judge, dissenting.
I respectfully dissent. The majority would reluctantly affirm the hearing officer's determination that Rule 10A-5.18(5) is an invalid exercise of delegated legislative authority solely because of alleged inadequacies in the economic impact statement prepared according to the dictates of section 120.54(2)(a), Florida Statutes, as set out in note 3, supra. The basis of the majority's affirmance amounts in my view to the very "adherence to form over substance" which the Florida Supreme Court found unwarranted in Florida-Texas Freight, Inc. v. Hawkins, 379 So.2d 944, 946 (Fla. 1979).
Alleged deficiencies in such statements will only justify reversal where such deficiencies rise to the level of material, procedural errors of such magnitude that they actually impair "the fairness of the [administrative] proceedings or the correctness of the action." Polk v. School Board of Polk County, 373 So.2d 960, 962 (Fla. 2d DCA 1979). Accord School Board of Broward County v. Gramith, 375 So.2d 340 (Fla. 1st DCA 1979); Division of Workers' Compensation v. McKee, 413 So.2d 805 (Fla. 1st DCA 1982). As this court has stated, reversal of an agency decision is not required solely because an economic impact statement appears to be facially deficient:
Such a standard would add a transparent technicality to the rule-making process and would exalt form over substance... . [I]f proceedings are not rendered unfair, or if the action is not found to be incorrect, then minimal deficiencies in an economic impact statement will not constitute reversible error.
Plantation Residents' Association, Inc. v. School Board of Broward County, 424 So.2d 879, 881 (Fla. 1st DCA 1982).
The facts in the present case  (1) that an economic impact statement pertaining to proposed rule 10A-5.18 was prepared in substantial compliance with section 120.54(2)(a), (2) that appellees had an opportunity to participate fully in the agency's rulemaking procedure and, at that time, to challenge the sufficiency of the economic impact statement,[1] and (3), most importantly, that the agency charged with administration of Chapter 400, Florida Statutes, determined that no cost impact would result from the adoption of a rule barring physical restraints in ACLF's because such restraints constitute nursing services which ACLF's are statutorily precluded from providing[2]  all suggest that neither the fairness *943 of the proceeding nor the correctness of the action was impaired by the failure to assign a specific cost estimate to the adoption of subsection 5 of rule 10A-5.18. At most, any such deficiency should be considered only harmless error.
In the present case we see at work the same process as when a circuit judge undertakes to determine an agency's policy in, say, a suit for declaratory judgment. A hearing officer of the Division of Administrative Hearings within the Department of Administration  a person removed from the agency's special area of expertise  attempts to ascertain the agency's policy in a rule challenge proceeding, based both upon his interpretation of the applicable statutes and, somewhat curiously, the testimony of witnesses. I will not go to the same lengths as did Judge Robert Smith's dissent in State of Florida, Department of Insurance v. Insurance Services Office, 434 So.2d 908, 914 (Fla. 1st DCA 1983), to declaim the use of extrinsic aids in construing a statute if the only issue at hand is whether the rule represents "an invalid exercise of delegated legislative authority." Section 120.56(1). It does seem reasonably clear to me, however, that, when confronted with such an issue, the hearing officer's sole responsibility is simply to determine whether the rule is within the range of permissible interpretations, or whether it is clearly erroneous. State, Department of Health and Rehabilitative Services v. Framat Realty, Inc., 407 So.2d 238, 241 (Fla. 1st DCA 1981).
If the above test had been employed by him in the rule challenge proceeding, the hearing officer's responsibility would have been discharged simply by comparing the language of the rule with that of the applicable statutes in ascertaining whether the rule fell within the permissible range of interpretations. If, having done so and having satisfied himself that the interpretation came within the range, his task was at an end. It was not necessary for him next to determine whether the interpretation advanced by the challenging party was more preferable than that placed upon the statutes by the agency. Under such circumstances, the best evidence of what the legislature intended was simply that expressed by the agency. By taking testimony from interested witnesses or allowing other evidence, in order to glean the legislative purpose, he replowed again the same terrain that should have been tilled during rulemaking and needlessly complicated his labors.
Believing then that the agency's ruleform interpretation of the statute was not beyond its delegated scope of authority, I would reverse.
NOTES
[1] 120.54(2)(c) provides:

Failure to provide an adequate statement of economic impact is grounds for holding the rule invalid; ...
[2] 400.441 Rules establishing minimum standards. 

(1) Pursuant to the intention of the Legislature to provide safe and sanitary facilities, the department shall promulgate, publish, and enforce rules to implement the provisions of this part, which shall include reasonable and fair minimum standards in relation to:
(a) The maintenance of facilities, not in conflict with the provisions of chapter 553, relating to plumbing, heating, lighting, ventilation, and other housing conditions, which will insure the health, safety, and comfort of residents and protection from fire hazard, including adequate provisions for fire alarm and other fire protection suitable to the size of the structure. Minimum fire safety standards shall be established and enforced by the State Fire Marshal in cooperation with the department. Such standards shall be included in the rules promulgated by the department after consultation with the State Fire Marshal.
(b) The number and qualifications of all personnel having responsibility for the care of residents.
(c) All sanitary conditions within the facility and its surroundings, including water supply, sewage disposal, food handling, and general hygiene, and maintenance thereof, which will insure the health and comfort of residents.
(d) The levying and enforcement of penalties and use of income from fees and fines.
(e) The enforcement of the resident bill of rights specified in s. 400.428.
(f) The care and maintenance of residents.
[3] 120.54(2)(a) provides:

Each agency, prior to the adoption, amendment, or repeal of any rule, shall provide information on its proposed action by preparing a detailed economic impact statement. The economic impact statement shall include:
1. An estimate of the cost to the agency of the implementation of the proposed action, including the estimated amount of paperwork;
2. An estimate of the cost or the economic benefit to all persons directly affected by the proposed action;
3. An estimate of the impact of the proposed action on competition and the open market for employment, if applicable; and
4. A detailed statement of the data and method used in making each of the above estimates.
[1] The circumstances of appellees' opportunity to participate in a rulemaking proceeding, and their failure to object to the proposed rules or to the economic impact statement prepared by the agency, do not by themselves estop them from later challenging the adopted rule. Contrast State Department of Health and Rehabilitative Services v. Barr, 359 So.2d 503 (Fla. 1st DCA 1978). Nevertheless, the affected party's opportunity to participate in rulemaking and its allowance to shape the rules regulating it may be factors to be considered in determining whether material, procedural errors have impaired the fairness of the proceedings or the correctness of the actions taken by the agency.
[2] In reviewing an agency's interpretation of regulatory statutes through formal rulemaking procedures, we have often recognized that the interpretation need not represent the only possible interpretation, or even the most desirable interpretation. See, e.g., State, Department of Health and Rehabilitative Services v. Framat Realty, Inc., 407 So.2d 238, 241 (Fla. 1st DCA 1981); Department of Administration v. Nelson, 424 So.2d 852 (Fla. 1st DCA 1982); Palm Beach Junior College Board of Trustees v. United Faculty of Palm Beach Junior College, 425 So.2d 133, 136 (Fla. 1st DCA 1982). Rather, the agency's interpretation will be sustained if it is "within the range of permissible interpretations of the statute, and ... has acquired legitimacy through rulemaking processes in which those challenging the rule fully participated or had an opportunity to participate." Framat, 407 So.2d at 241 (e.s.).

When as here an agency has responded to rulemaking incentives and has allowed affected parties to help shape the rules they know will regulate them in the future, the judiciary must not, and we shall not, overly restrict the range of an agency's interpretative powers. Permissible interpretations of a statute must and will be sustained, though other interpretations are possible and may even seem preferable according to some views. If the rule binds too tightly to suit them, the appellee[s] ... have their proper remedy in the representative and politically responsive branches, the legislative or executive, but not in the judiciary, nor in Section 120.56 rule challenge proceedings before a hearing officer.
Id. at 242.