463 So.2d 1213 (1985)
BOARD OF OPTOMETRY, DEPARTMENT OF PROFESSIONAL REGULATION, Appellant, and
Florida Optometric Association, Inc., James A. Stephens, O.D., and Donnie D. Dance, O.D., Appellants,
v.
FLORIDA MEDICAL ASSOCIATION, INC., Florida Society of Ophthalmology, and William J. Broussard, M.D., Appellees.
No. AY-253.
District Court of Appeal of Florida, First District.
February 7, 1985.
Rehearing Denied March 14, 1985.
Susan Tully, Asst. Atty. Gen., for appellant Bd. of Optometry.
*1214 Leonard A. Carson, Carson & Linn, P.A., Tallahassee, for appellants Fla. Optometric Ass'n, James A. Stephens, O.D., and Donnie D. Dance, O.D.
Kenneth G. Oertel and Segundo J. Fernandez, Oertel & Hoffman, P.A., Tallahassee, for appellees.
WIGGINTON, Judge.
Before us is an appeal from a challenge to the validity of the Board of Optometry's proposed rule 21Q-3.10 and the Board's 1975 policy statement, both relating to the use and prescription of legend drugs by optometrists. Section 120.54(4)(a), Florida Statutes (1983). The hearing officer held, inter alia, that the petitioners, appellees herein, had standing to challenge the rule and policy statement; that the policy statement is a "rule" within the meaning of section 120.52(15), Florida Statutes (1983), but not adopted in accordance with section 120.54, and therefore an invalid exercise of delegated legislative authority; and that the proposed rule is also an invalid exercise of delegated legislative authority. For the reasons hereinafter set forth, we affirm.
By virtue of section 463.005, Florida Statutes (1983), the Board of Optometry
... is authorized to make such rules not inconsistent with law as may be necessary to carry out the duties and authority conferred upon the board by this chapter and as may be necessary to protect the health, safety, and welfare of the public. Such rules shall include, but not be limited to, rules relating to:
(1) A standard of practice for licensed optometrists... .
On the strength of that authority, the Board proposed an amendment to rule 21Q-3.10 which would set forth standards for the prescribing and use of legend drugs by optometrists, and provide guidelines for determining the competence of individual optometrists who use such drugs.[1] In so doing, the Board admits it had assumed that chapter 463 authorizes optometrists to use drugs, an assumption arising from its interpretation of section 463.002, Florida Statutes (1981), already embodied in its 1975 policy statement. Appellants' position is that the Board's interpretation of section 463.002, which defines "optometry," is a permissible one, logically flowing from its duty under section 463.005 to promulgate rules necessary to protect the health, safety and welfare of the public, and supported by the chapter's legislative history and the educational evolution of the practice of optometry.
Section 463.002(4) defines "optometry" as meaning
... the diagnosis of the human eye and its appendages; the employment of any objective or subjective means or methods for the purpose of determining the refractive powers of the human eyes, or any visual, muscular, neurological, or anatomic anomalies of the human eyes and their appendages; and the prescribing and employment of lenses, prisms, frames, mountings, contact lenses, orthoptic exercises, light frequencies, and any other means or methods for the correction, remedy, or relief of any insufficiencies or abnormal conditions of the human eyes and their appendages.
In support of their position, appellants point to the fact that in 1939, the legislature omitted the earlier statutory prohibition against optomestrists' utilizing drugs in their practice and performing surgery. Appellants reason that that omission necessarily implied legislative authorization, citing to the rule of statutory interpretation which holds that when the legislature amends a statute by omitting words, it is presumed to have intended the statute to have a meaning different from that accorded it before the amendment. See e.g., Capella v. City of Gainesville, 377 So.2d 658 (Fla. 1979); Carlile v. Game and Fresh *1215 Water Fish Commission, 354 So.2d 362 (Fla. 1977).[2]
We do not dispute the validity of that venerable rule of statutory construction, but we are convinced that strictly applying it to this context to span the chasm between an omission and a substantive authorization would require a quantum leap in logic. Instead, we approve the hearing officer's approach, that the statute at best neither expressly authorizes nor prohibits the prescription and use of legend drugs by optometrists. The issue of whether the Board has the authority to adopt the rule is resolved by determining whether section 463.002(4) may be permissibly interpreted as authorizing optometrists to use legend drugs. Department of Professional Regulation, Board of Medical Examiners v. Durrani, 455 So.2d 515 (Fla. 1st DCA 1984); Department of Administration v. Nelson, 424 So.2d 852 (Fla. 1st DCA 1982).
The legislative purpose behind enacting chapter 463 was to protect the public's health, safety, and welfare by establishing minimum qualifications to shield the public from "unskilled and incompetent" practitioners. Section 463.001, Florida Statutes (1983). We are of the opinion that the Board's interpretation of sections 463.002(4) and 463.005 to authorize the use of legend drugs by optometrists is an impermissible one, one that substantively amends, or adds to, the statute and materially departs from the stated legislative purpose. State, Department of Health and Rehabilitative Services v. McTigue, 387 So.2d 454 (Fla. 1st DCA 1980); Department of Health and Rehabilitative Services v. Florida Psychiatric Society, Inc., 382 So.2d 1280 (Fla. 1st DCA 1980). There is absolutely no indication in chapter 463 that the legislature could have intended such a result. Although section 463.002(4) utilizes the broad phrases "any objective or subjective means or methods" and "any other means or methods," there is no competent evidence in the record that legend drugs can be included within the classes encompassed by those phrases. As the hearing officer observed in his order:
The BOARD fails to comprehend the limits of its power. It may only adopt rules consistent with Chapter 463 and for the purpose of carrying out the terms of the statute. § 463.005. It may adopt standards of practice for licensed optometrists, Id. But it may not adopt standards which exceed or attempt to expand the scope of optometry as defined by Section 463.002(4). There may be, as the BOARD argues, good reasons for expanding the bounds of optometry, but the power to do so rests with the legislature, not the BOARD. Here, the statute does not authorize optometrists to prescribe or use legend drugs in their practice. The BOARD cannot adopt a rule which attempts to supply this authority. The proposed rule, standing alone, can neither add to nor vary the scope of practice defined by Section 463.002(4), F.S.
Accordingly, we hold that the proposed rule constitutes an invalid exercise of the Board's delegated legislative authority.
Appellants also argue that appellees are barred by the doctrine of laches from challenging the 1975 policy statement. Although their argument could be a valid one, see generally Devine v. Department of Professional Regulation, Board of Dentistry, 451 So.2d 994, 997 (Fla. 1st DCA 1984), since we now hold their interpretation of authorization to be an impermissible one, the policy statement in any event must fall along with the rule. Thus, we need not reach this issue.
Finally, appellants challenge appellees' standing. Their argument is founded on an interpretation of this Court's opinion in an earlier appeal in this same cause brought by appellees when their rule challenge petition was dismissed for lack of *1216 standing. See Florida Medical Association v. Department of Professional Regulation, 426 So.2d 1112 (Fla. 1st DCA 1983). Despite the fact that in that appeal we reversed the hearing officer's dismissal of the petition, appellants contend the import of our opinion was to grant appellees only conditional standing which hinged on the correctness of their challenge. Appellants must have overlooked, however, the following language in Florida Medical Association:
Our review convinces us that the petition sufficiently alleges facts to establish standing with respect to the Florida Medical Association, Inc., Florida Society of Ophthalmology, and William J. Broussard, M.D... .
426 So.2d, at 1113. Clearly, we held that appellees had standing. In any event, if appellees' standing did hinge on the correctness of their position, then by our opinion today the correctness of their position is established and we approve the hearing officer's conclusion that appellees had standing.
For the foregoing reasons, the final order of the hearing officer is AFFIRMED.
WENTWORTH and THOMPSON, JJ., concur.
NOTES
[1] Most of the drugs optometrists have used are intended for topical application to the eye, and are generally classified as topical anesthetics, mydriatics, cycloplegics, miotics, and antibiotics.
[2] Interestingly, the record indicates that, despite the 1939 amendment, the "practitioners" themselves did not feel authorized by chapter 463 to use legend drugs until the mid-1970's, at which point they reinterpreted the chapter in light of their expanded education, by then including courses in pharmacology. Also, during that period and up to the present, legislative activity has vacillated between specifically authorizing the use of drugs and prohibiting such use.