# FLORIDA ASSOCIATION OF NURSE ANESTHETISTS v DEPARTMENT OF PROFESSIONAL REGULATION, BOARD OF DENTISTRY

## Case No. 85-4249R

State of Florida, Division of Administrative Hearings

March 14, 1986

### APPEARANCES OF COUNSEL

**Michael I. Schwartz** for petitioner.
**John Griffin,** Assistant Attorney General, for respondent.

### OPINION

DONALD D. CONN, Hearing Officer.

### *FINAL ORDER*

A final hearing was held in this case on January 13 and 14, 1986, in

Tallahassee, Florida, before Donald D. Conn, a duly designated Hearing Officer of the Division of Administrative Hearings. The parties were represented by counsel.

The Florida Association of Nurse Anesthetists, Petitioner, has challenged the validity of proposed Rules 21G-14.001(7) and 21G-14.005(1), *Florida Administrative Code*, pursuant to Section 120.54(4), *Florida Statutes*. At the hearing Petitioners called two witnesses and introduced five exhibits, while the Board of Dentistry, Board, introduced three exhibits and called three witnesses. The parties also introduced six joint exhibits. Official recognition was taken of Chapters 458, 464 and 466, *Florida Statutes*, Sections 395.002 and 395.011, *Florida Statutes*, and Rule Chapters 210-11 and 210.16, *Florida Administrative Code*. A transcript of the hearing was filed on February 18, 1986.

The parties were allowed to submit posthearing proposed findings of fact pursuant to Section 120.57(1)(b)4, *Florida Statutes*, and a ruling on each proposed finding that has been filed is included in the Appendix to this Final Order.

## FINDINGS OF FACT

1. In the November 27, 1985 edition of The Florida Administrative Weekly, Volume 11, Number 48, the Board noticed Proposed Rules 21G-14.001(7) and 21G-14.005(1), *Florida Administrative Code*, which were timely challenged by Petitioner and which provide as follows:

*21G-14.001 Definitions.*

.   .   .   .   .   .   .   .   .   .   .   .

(7) Office team approach—A methodology employed by a dentist in the administration of general anesthesia and *parental conscious sedation* ~~intravenous sedative~~ whereby the dentist may use one or more qualified anesthetic auxiliaries who, working under the direct supervision of the dentist, assist the dentist, ~~may monitor vital signs, assist the dentist,~~ and assist in emergency care of the patient.

*21G-14.005 Application for Permit.*

(1) No dentist shall administer or supervise the administration of general anesthesia, or parental conscious sedation in a dental office for dental patients, unless such dentist possesses a permit issued by the Board. The dentist holding such a permit shall be subject to review and such permit must be renewed biennially.

2. The cited statutory authority for these proposed rules includes Sections 466.004(3) and 466.017(3), *Florida Statutes*.

240

3. Parenteral conscious sedation is defined by proposed Rule 21G-14.001(6), which is not challenged in this case, as:

*21G-14.001 Definitions.*

. . . . . . . . . . .

(6) Parenteral conscious sedation— A depressed level of consciousness produced by the parenteral administration of pharmacologic substances, that retains the patient's ability to independently and continuously maintain an airway and respond appropriately to physical stimulation or verbal command. This modality includes administration of medications via all parenteral routes; that is: intravenous, intramuscular, subcutaneous, submucosal, or inhalation. ~~Intravenous sedation— A state of deep sedation produced by the intravenous injection of one or more appropriate pharmacological agents, in which state the patient may appear to be unconscious but has not obtained his protective autonomic reflexes.~~

4. A patient who is receiving parenteral conscious sedation will frequently slip in and out of consciousness, or a state of general anesthesia. General dentists do not receive adequate training in undergraduate dental school in the administration of general anesthesia and the treatment of medical emergencies which may result therefrom, and are not qualified to administer general anesthesia or treat resulting medical emergencies. The evidence is undisputed that a dentist who lacks the additional training in general anesthesia and parenteral conscious sedation, which would be required under these rules, is not capable of competently and safely administering anesthesia or sedation himself, and does not possess the ability to competently assess all risks attendant to the administration of general anesthesia or parenteral conscious sedation. Additionally, such a dentist is not able to competently assess whether a patient is an acceptable risk for anesthesia or sedation, or to react to medical complications that may arise, such as respiratory obstruction and arrest, allergic or idiosyncratic reaction to drugs, cardiac arrest, miocardial infarction, seizures, and hypertensive crises.

5. Since general dentists without further training in anesthesia are not qualified to administer general anesthesia in their dental office, or treat resulting medical emergencies, they are also not qualified to supervise the administration of general anesthesia in their office.

6. The educational training received by undergraduate dentists in accredited dental schools in the United States and Canada offers only a brief didactic exposure to general anesthesia and parenteral conscious sedation of about 48 classroom hours. Clinical training is not offered. It

241

is only at the graduate level of training, internship or residency programs that dental schools are required to offer training in dealing with medical emergencies. The general dentist does not maintain the equipment necessary to deal with medical emergencies and life threatening occurrences.

7. Life threatening medical emergencies can develop while a patient is under general anesthesia, and a dentist administering or supervising the administration of general anesthesia must be able to deal with such emergencies. Undergraduate dental schools devote less than twenty-one hours in their entire program to the handling and treatment of medical emergencies and the evaluation of patients, and this does not prepare a general dentist without further training to deal with such emergencies.

8. Certified registered nurse anesthetists (CRNA) are licensed by the Board of Nursing as advanced registered nurse practitioners. According to Nursing Board Rule 210-11.22, *Florida Administrative Code*, amended June 18, 1985:

> 210-11.22 Functions of the Advanced Registered Nurse. All categories of Advanced Registered Nurse Practitioner may perform functions listed in Section 464.012(3), F.S. The scope of practice for all categories of ARNPs shall include those functions which the ARNP has been educated to perform including the monitoring and altering of drug therapies, according to the established protocol and consistent with the practice setting.

Specific activities which a CRNA may perform are enumerated in Section 464.012(4)(a), *Florida Statutes* (1984 Supplement). However, Section 464.012(3) specifies that these activities must be within the framework of an established protocol and that a licensed medical doctor, osteopathic physician or dentist shall maintain supervision for directing the specific course of medical treatment on any patient. Thus, a CRNA is not authorized to work independently on patients, but must operate within established protocols and under supervision.

9. In order to become a CRNA, a registered nurse with at least one year's clinical experience in critical care nursing has to graduate from a two year accredited nurse anesthetist program comprised of approximately 425 contact hours, and also conduct 450 administrations of anesthesia consisting of 800 hours of actual anesthesia time. Thus, a CRNA has more training and experience in the administration of anesthesia than a general dentist receives in undergraduate dental school.

10. The proposed rules in question were adopted to preclude a general dentist from employing a CRNA to administer anesthesia in

242

his office unless he has received training beyond undergraduate dental school in anesthesia and has obtained a permit from the Board. As expressed in the Purpose and Effect portion of the notice for these proposed rules:

> . . . . The effect of the proposed amendment will be further assurance that those dentists who are using anesthesia, and related forms of sedation, have met minimal standards designed to protect the public's health, safety and welfare . . .

> .   .   .   .   .   .   .   .   .   .   .

> The purpose of the proposed rules is to implement the provisions of Section 466.017 (3)(e), F.S., as enacted by the 1985 Florida Legislature. The rules are designed to insured that those dentists who utilize general anesthesia or parenteral conscious sedation in a dental office for dental patients on an outpatient basis meet certain minimum qualifications. It is the opinion of the Board that dentists who administer or supervise the administration of general anesthesia or parenteral conscious sedation on an outpatient basis must satisfy certain training, equipment, and staffing requirements prior to engaging in such activity. The effect of the proposed rules is the establishment of a permitting procedure, as well as the requirement that adverse occurrences resulting from the use of nitrous-oxide inhalation analgesia, parenteral conscious sedation, general anesthesia be reported. These new procedures and requirements should enhance the protection of the public from licensees who are otherwise not competent to use general anesthesia, parenteral conscious sedation, or nitrous-oxide inhalation analgesia.

11. The Economic Impact Statement (EIS) accompanying these proposed rules states, in pertinent part that:

> The proposed amendment will have some economic impact upon those licensees who are currently authorized to use general anesthesia and parenteral sedation. Upon the effective date of these rules, these individuals will be required to pay a permit application fee as well as expend those funds necessary to bring their training, equipment, and staffing level up to the requirements of the proposed rules. The precise number of dentists to be affected by the proposals and the precise impact upon them, other than the permit application fee, is not known at this time.

> .   .   .   .   .   .   .   .   .   .

> The proposed rules should have an economic impact upon those dentists who currently administer or supervise the administration of general anesthesia and parenteral conscious sedation. Although the

**243**

proposed rules do not in any way affect a dentist's ability to utilize general anesthesia or parenteral conscious sedation in a hospital or other medical facility, the rules will require the dentist to obtain a permit and to maintain his office at certain equipment and staffing level. Aside from the permit application fee, the precise economic impact upon those dentists who currently utilize general anesthesia or parenteral sedation is not known at this time. It is anticipated that any additional costs to the practitioner will be passed on to the consumer.

the fact that patient costs might increase as a result of these proposed rules was supported by Petitioner's witnesses Ira Gunn and Barbara Quick, but neither witness offered any more detailed information about the economic impact of these proposed rules than is contained in the Economic Impact Statement. Further, Petitioner offered no evidence to show that the proposed rules would affect persons other than those referenced in the Economic Impact Statement. It has not been demonstrated that the Economic Impact Statement is either inadequate, misleading or inaccurate.

12. The evidence in the record is insufficient to support a finding that Petitioner is a non-profit corporation registered in Florida and is composed of a majority of the licensed nurse anesthetists in Florida, that it is the only Florida association of general membership representing nurse anesthetists, or that many of its members will be substantially affected by these rules. There is no evidence of Petitioner's legal status, its purposed as reflected in any by-laws, its membership, or the number of members who will be substantially affected by the rules. Thus, Petitioner has not proven the allegations in its petition regarding its standing in this matter.

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction over the parties and subject matter in this cause. Section 120.54(4), *Florida Statutes.*

### Standing

Based upon the evidence presented, Petitioner has not established that the effect of these proposed rules on its members will be real and immediate, or that its members will be "substantially affected" in any way by their adoption. Section 120.54(4)(a), *Florida Statutes.* Petitioner also has not shown that these rules are within the association's general scope of interest and that the relief sought herein is appropriate for an association such as Petitioner to receive on behalf of its members.

244

*Florida Home Builders Association v. Department of Labor and Employment Security,* 412 So.2d 351, 353 (Fla. 1982); *Board of Optometry, Department of Professional Regulation v. Florida Medical Association,* 463 So.2d 1213 (Fla. 1st DCA 1985). Therefore, Petitioner has not established its standing to challenge the proposed rules here in question.

### Economic Impact Statement

Assuming *arguendo* that Petitioner has standing, it has not sustained its burden regarding its allegation that the Board's Economic Impact Statement for these rules is inadequate and fails to meet the requirements of Section 120.54(2)(b), *Florida Statutes.* There is no evidence that the Board's Statement was misleading, inaccurate or in any way impaired the fairness of the proceeding, and as such any error that the Board may have committed was harmless. Administrative rules will not be declared invalid due to harmless error in the preparation of an Economic Impact Statement. *Plantation Residents Association, Inc. v. School Board of Broward County,* 424 So.2d 879 (Fla. 1st DCA 1982); *School Board of Broward County v. Grameth,* 375 So.2d 340 (Fla. 1st DCA 1979(.

Even if an agency cannot calculate the exact impact which its proposed rule will have on certain people, it is sufficient if its Economic Impact Statement indicates there will be "some" impact. *Department of Natural Resources v. Sailfish Club of Florida, Inc.,* 473 So.2d 261 (Fla. 2st DCA 1985). Agencies are not required to address the impact of their rules on particular persons, applicants or licenses, nor are they required to exhaust every degree of completeness in the preparation of an Economic Impact Statement. *Health Care and Retirement Corporation of America v. Department of Health and Rehabilitative Services,* 473 So.2d 1175 (Fla. 1st DCA 1984).

Therefore, Petitioner has failed to meet the burden of proof on its challenge to the Board's Economic Impact Statement.

### Validity of Proposed Rules

The validity of rules normally will be sustained as long as they are reasonably related to the purpose of the enabling statute and are not arbitrary and capricious. *Florida Beverage Corporation v. Wynne,* 306 So.2d 200 (Fla. 1st DCA 1975); *Grove Isle, Ltd. v. Department of Environmental Regulation,* 454 So.2d 571 (Fla. 1st DCA 1984); *Department of Professional Regulation, Board of Medical Examiners v. Durrani,* 455 So.2d 515 (Fla. 1st DCA 1984).

The party challenging the validity of administrative rules on the

**245**

grounds of arbitrariness or capriciousness carries the burden of demonstrating by a preponderance of the evidence that the rule is not supported by fact or logic, was adopted without thought or reason, or is otherwise not based on competent substantial evidence. *Humana, Inc. v. Department of Health and Rehabilitative Services*, 469 So.2d 889 (Fla. 1st DCA 1985). A party challenging the facial validity of rules must show that the agency's interpretation of a statute it is charged with implementing is clearly erroneous or unauthorized. An agency's interpretation of such a statute will be upheld if it has made a permissible statutory interpretation in the enactment of its rules even though another interpretation may be possible or even preferable. *Humhosco v. Department of Health and Rehabilitative Services*, 476 So.2d 258 (Fla. 1st DCA 1985).

In this case, assuming *arguendo* that it has standing, Petitioner has failed to show that the challenged proposed rules are arbitrary or capricious, or that they lack facial validity. The Board has proposed the adoption of the rules in question under the authority of Section 466.017(3)(b) through (e), *Florida Statutes*, which authorize it to adopt rules which establish minimal training, experience, education, or certification for dentists using general anesthesia or sedation. Proposed Rule 21G-14.005 carries out this statutory authority by requiring dentists who administer or supervise the administration of general anesthesia or parenteral conscious sedation to possess a permit which they obtain after fulfilling certain education and training requirements set forth elsewhere in unchallenged Board rules. The Board has established by evidence it presented at the hearing that general dentists do not receive sufficient training in dental school to competently administer or supervise the administration of these substances. Improperly administered general anesthesia or parenteral conscious sedation can present a real and significant threat to the patient and emergencies may arise during such administration which can be life threatening if the dentist is not able to deal with them. Thus, there is a reasonable basis for the Board's action in proposing these rules.

Petitioner contends that the rules in question unduly restrict their right to practice and conflict with Chapter 464, *Florida Statutes*, the Nurse Practice Act. Further, it argues that the Board of Dentistry lacks the authority to regulate its members who are licensed under Chapter 464. This argument is without merit since it is clear from the terms of the rules challenged that they relate to, and regulate dentists who administer or supervise the administration of anesthesia. The Board certainly has the authority to require dentists to demonstrate their competency by obtaining a permit before they use or supervise the

246

use of these substances. The Nurse Practice Act does not exempt from regulation by the Board of Dentistry those activities engaged in by dentists or the supervision of certain activities by dentists. In fact, Section 464.012(3), *Florida Statutes*, specifies that nurse anesthetists shall perform their functions within established protocols and under the supervision of certain practitioners, including dentists. See also Section 466.002(2), *Florida Statutes*. It is the Board of Dentistry which is responsible for determining which licensed dentists are competent to provide such supervision. See also Sections 464.012(4)(a), 395.011(2)(b) and 395.002(9), *Florida Statutes*, which appear to limit the reference to "established protocols to those existing in hospitals and ambulatory surgical centers.

Since it has been found that general dentists without further training in anesthesia are not qualified to administer or supervise the administration of general anesthesia in their office, it would be unreasonable to construe Chapter 466, the Dental Practice Act, or Chapter 464, the Nurse Practice Act, in a way that precludes the Board of Dentistry from insuring that unqualified dentists do not supervise the administration of anesthesia or sedation by nurse anesthetists.

Based upon the foregoing, it is hereby determined that the relief sought by Petitioner in its challenge to the validity of the Board's Proposed Rules 21G-14.001(7) and 21G-14.005(1) is hereby DENIED.

DONE and ORDERED this 14th day of March, 1986, at Tallahassee, Florida.